IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CMI Roadbuilding, Inc., and CMI Roadbuilding Ltd. <br><br> Plaintiffs, <br><br> v. <br><br> SPECSYS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Case No.   CIV-18-1245-G |

## COMPLAINT

COME NOW the Plaintiffs, CMI Roadbuilding, Inc. and CMI Roadbuilding, Ltd. for their Complaint against the Defendant, SpecSys, Inc. and allege and state as follows:

### JURISDICTION AND VENUE

1. Plaintiff CMI Roadbuilding, Inc. ["CMI"] is a Delaware corporation with its principal place of business in Oklahoma City, Oklahoma. CMI Roadbuilding, Inc. is a wholly owned subsidiary of CMI Roadbuilding Ltd.

2. Plaintiff CMI Roadbuilding Ltd. is a private company organized and maintaining its principal place of business in the United Kingdom.

3. SpecSys, Inc. ["SpecSys"] is a Minnesota corporation with its principal place of business in Montevideo, Minnesota.

4. This Court has original subject matter jurisdiction over all claims asserted in this case under 28 U.S.C. §1332 based on diversity of citizenship. Defendant is a citizen of Minnesota. CMI Roadbuilding, Inc. is a citizen of Delaware and/or Oklahoma. CMI

Roadbuilding Ltd. is a citizen of the United Kingdom. The amount in controversy exceeds $75,000.

5. This Court has original subject matter jurisdiction under 28 U.S.C. §1331 over the Defend Trade Secrets Act claims asserted herein. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over all remaining claims asserted herein as all state and federal claims arise from and are related to the same case and controversy.

6. The Terms and Conditions of the agreements between CMI and SpecSys on which this action is premised state the proper and exclusive forum and venue in all legal actions brought to enforce or construe any terms of the agreements shall be the United States District Court for the Western District of Oklahoma. The agreements further specify the application of Oklahoma law.

## FACTS

7. CMI Roadbuilding Ltd is the owner of certain Trade Secrets which include detailed engineering documents used to manufacture and assemble equipment and to manufacture and assemble parts and components for equipment assembled and/or sold by CMI.

8. The Trade Secrets include ideas and innovations with commercial value. The Trade Secrets are not generally known to the public and are not readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.

9. The information contained in the Trade Secrets is extremely detailed and complex. It would take significant time, knowledge and expense to replicate the engineering documents to manufacture identical items or replacement parts that would be compatible

with such items. A substantial amount of time, effort and money were expended in developing the Trade Secrets.

10.     CMI Roadbuilding Ltd. has granted a license to CMI to use the Trade Secrets.

11.     At all times, CMI Roadbuilding Ltd. and CMI have taken reasonable efforts to maintain the confidentiality of the trade secrets.

12.     On or about October 9, 2017 SpecSys, Inc. entered into a Confidentiality and Non-Disclosure Agreement ["NDA"] with CMI. (Exhibit No. 1).

13.     The NDA provided in paragraph 3 that any design resulting from the recipient's exposure to CMI's Trade Secrets shall immediately become the sole and absolute property of CMI.

14.     The NDA provided in paragraph 5 that CMI retained title to its Trade Secrets and all copies thereof.

15.     The NDA also set forth in paragraph 8 that recipient would promptly deliver to CMI all tangible copies of the Trade Secrets upon expiration or earlier termination of the agreement.

16.     During the course of discussions between SpecSys and CMI, SpecSys continually represented that it was the leading authority in mobile equipment design, had the most highly experienced engineering and manufacturing talent in the industry and could bring CMI's products forward to market faster and better than anyone else, including CMI. The representations led to additional conversations about SpecSys reviewing and completing engineering documents on several projects. SpecSys represented to CMI they were so familiar with CMI's business that SpecSys could hit the ground running to not only finish

the design and engineering on each project but build quality units that were consistent with CMI's desire to have the fastest route to the market. Based upon these and other representations, CMI entered into a business relationship with SpecSys and issued certain Purchase Orders.

17. On January 11, 2018, following a representation by SpecSys that it was winding down several contracts and could easily fit CMI into their production schedule, CMI issued Purchase Order 17580 ("PO 17580"). Pursuant to PO 17580, SpecSys was to provide certain services and manufacturing on the TR-4 Trimmer ("TR-4"). (Exhibit No 2). A TR-4 is used to trim the road base before the pavement is placed on the road base.

18. PO 17580 contained the terms and conditions applicable to the transaction. SpecSys agreed to provide overall management and routing, material management, quality control and direct labor for the engineering and assembly of a TR-4 prototype for $231,152.00.

19. Once the TR-4 prototype was assembled, tested, and approved, SpecSys agreed to assemble three additional TR-4 units for a total of $568,848.00.

20. Following the acceptance of the PO 17580 by SpecSys, CMI provided Trade Secrets to SpecSys and SpecSys used those Trade Secrets to create new documents. To date CMI has paid $216,608.42 (94%) for the prototype and $87,001.31 (46%) for a second TR-4 unit contemplated by PO 17580. Although SpecSys agreed to the time requirements for the Purchase Order, SpecSys has yet to complete the purchase order.

21. On March 2, 2018, CMI issued Purchase Order 18643 ("PO 18643") in the amount of $225,742.00, pursuant to which SpecSys agreed to provide certain engineering services

on a TP-4 AutoPlace Placer ("TP-4"). (Exhibit No. 3).  The TP-4 is used to place concrete on a road base to be formed by a slip-form paver.

22. PO 18643 contained the terms and conditions applicable to this transaction. SpecSys was to complete the in-progress updating of the engineering from the original machine. Following the acceptance of PO 18643 by SpecSys, CMI provided Trade Secrets to SpecSys and SpecSys used the Trade Secrets to create new design documents.  To date, CMI has paid $119,512.37 (53%) upon PO 18643 without receiving any updated engineering documents.

23. On March 2, 2018, CMI issued Purchase Order 18644 ("PO 18644") in the amount of $25,000.00, pursuant to which SpecSys was to prepare a manual for the TR-4. (Exhibit No. 4).   PO 18644 contained the terms and conditions applicable to this transaction. To date, CMI has paid $20,517.64 (82%) upon PO 18644 without receiving any manual.

24. On March 2, 2018, CMI also issued Purchase Order 18645 ("PO 18645") in the amount of $4,000.00 pursuant to which SpecSys agreed to provide services for the TR-4 Development project and the TP-4 Engineering Project.  (Exhibit No. 5). PO 18645 contained the terms and conditions applicable to this transaction. Following the acceptance of PO 18645 by SpecSys, CMI provided Trade Secrets to SpecSys and SpecSys used the Trade Secrets to create new design documents.

25. In April 2018, SpecSys offered engineering support and engineering management should CMI encounter a problem with its engineering department. During the work upon PO 17580, and the other Purchase Orders, SpecSys constantly disparaged the engineering work provided by CMI. On a conference call with the then CMI engineer Chad Harrison,

SpecSys ranted about the shortfalls at CMI engineering and insulted Mr. Harrison's ability, professionalism, and work product. SpecSys also told Mr. Harrison his days at CMI were numbered.

26. SpecSys interfered with CMI's relationship with engineer Chad Harrison to the point Mr. Harrison left CMI's employment in June 2018. The departure of Mr. Harrison from employment severely hampered the ability of CMI to conduct engineering work and necessitated a greater reliance upon SpecSys.

27. On May 24, 2018, CMI issued Purchase Order 20501 ("PO 20501"), in the amount of $187,400.00, pursuant to which SpecSys agreed to provide four engineers for three months for various engineering services. (Exhibit No. 6).  PO 20501 contained the terms and conditions applicable to the services to be provided under PO 20501. Following the acceptance of PO 20501 by SpecSys, CMI provided Trade Secrets to SpecSys and SpecSys used the Trade Secrets to create new design documents.

28. To date, CMI has paid $40,945 (22%) upon PO 20501. Although SpecSys was requested to provide documentation of its efforts on PO 20501, no documentation was forthcoming.

29. On July 10, 2018, CMI issued Purchase Order 21234 ("PO 21234") in the amount of $13,652.34, for the release of various wiring harness related items.  (Exhibit No. 7). PO 21234 contained the terms and conditions applicable to the services to be provided under PO 21234. Following the acceptance of PO 21234 by SpecSys, CMI provided Trade Secrets to SpecSys.

30. After the receipt of invoices from SpecSys in July 2018, CMI requested an accounting and a detailed explanation of the work being performed by SpecSys. No detailed explanation was forthcoming.

31. On August 16, 2018 SpecSys advised CMI it had unilaterally moved several of the project delivery dates covered by the Purchase Orders. During the performance of the Purchase Orders, SpecSys rarely contacted engineering at CMI to inquire about perceived issues relating to the Purchase Orders. Rather, with every problem encountered SpecSys stated it did what Chad Harrison told it to do or what was called for in the engineering documents. Of course, this was contrary to the reason SpecSys was employed.

32. SpecSys represented to CMI its control systems were the only reliable and supportable way to go for CMI's equipment. SpecSys represented its control platform could easily be applied among many different types of mobile equipment. SpecSys steered CMI away from using other control systems which could have been acquired for little or no cost.

33. Based upon the representations of SpecSys, CMI issued Purchase Order 22015 ("PO 22015") on August 23, 2018 in the amount of $121,481.00. Under the terms of PO 22015, SpecSys agreed to develop, test and debug software and controls on the SP-5 and provide engineering services and documentation (Exhibit No. 8). PO 22015 contained the terms and conditions applicable to the services to be provided under PO 22015.

34. Also pursuant to the representations of SpecSys, CMI issued Purchase Order 22016 ("PO 22016") on August 23, 2018 in the amount of $121,481.00. PO 22016 required SpecSys to develop, test, and debug software and controls on the TM-11 and provide

engineering and documentation. (Exhibit No. 9). PO 22016 contained the terms and conditions applicable to the services to be provided under PO 22016.

35. On August 28, 2018 SpecSys said it would not go forward without additional Purchase Orders for the SpecSys staff engaged on the work subject of the existing Purchase Orders. At that time SpecSys stated CMI needed a complete redesign of all controls. SpecSys also stated that if a decision was not made on August 28, 2018, staff would be moved to other projects and the staff would not return soon to any CMI projects.

36. On September 7, 2018 SpecSys represented to CMI it would finish the ongoing efforts on the SP-5 controls, the TM-11 controls, the TR-4 controls, and the TP-4 controls as per the Purchase Orders. However, contrary to the terms and conditions of the Purchase Orders SpecSys demanded payment in full of the applicable Purchase Orders before September 14, 2018 to keep SpecSys engaged on this effort.

37. When SpecSys stopped work upon PO 22015 and PO 22016 relating to the control systems for the SP-5 and TM-11, SpecSys was aware CMI had substantial inventory awaiting installation of the control systems. In an effort to mitigate its damages, CMI located control systems in two to three weeks which merely required the purchase of the hardware—not the software which SpecSys represented was necessary and for which it was charging CMI.

38. On September 11, 2018 SpecSys advised it had placed the final assembly on hold for the TR-4 prototype. SpecSys also repeated its demand for payment in full on the Purchase Orders related to the SP-5 and the TM-11 before September 14, 2018. SpecSys further asserted if payment was not received, it would move the resources being held for

8

the TR-4 and TP-4 controls to other clients killing any chance of the SP-5, TM-11, TR-4 and TP-4 projects being completed before May 2019.

39. On September 17, 2018 SpecSys advised if it were not paid in full: 1) no machines (RM-6, RM-7, SP-5) would leave SpecSys; 2) the TP design would become the intellectual property of SpecSys; and 3) all employees would be reassigned with no ability to return to the CMI project before 2019.

40. On September 18, 2018 CMI made proposals to SpecSys in an effort to mitigate the damages it was incurring and resolve the stalemate created by SpecSys. CMI reminded SpecSys it had paid nearly $500,000 to date upon the Purchase Orders. CMI offered to pay an additional $114,412.01 upon outstanding invoices. CMI made additional proposals as to specific Purchase Orders. SpecSys rejected all proposals.

41. On September 19, 2018, as a result of the failure to reach any agreement with SpecSys, and in an effort to mitigate significant ongoing damages, CMI directed SpecSys to stop work upon all the Purchase Orders. Thereafter, on September 20, 2018 CMI requested SpecSys to compile the documents, files and drawings which had been furnished and/or developed pursuant to the Purchase Orders.

42. On September 23, 2018 CMI requested that SpecSys advise CMI when SpecSys was ready to transfer all engineering documents, analysis, software, drawings new and old including all marked up and corrected drawings, and data. No engineering documents, analysis, software, drawings, and data have been transferred by SpecSys.

43. On October 26, 2018, SpecSys advised it had instructed its attorney to move forward with debt collection efforts to the fullest amount allowed by law. SpecSys further stated

that it would not permit the shipment of wire harnesses for the TM-11 until such time that all accounts were brought current.

## COUNT I
## BREACH OF CONTRACT—PO 17580

44. CMI realleges and incorporates by reference paragraphs 1 through 43 above.

45. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

46. SpecSys accepted the Terms and Conditions contained in PO 17580 by beginning performance under PO 17580 without objecting to the Terms and Conditions contained in PO 17580.

47. SpecSys breached the agreement represented by PO 17580 by failing to perform its obligations as set forth in PO 17580.

48. SpecSys' breach of PO 17580 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT II
## BREACH OF CONTRACT—PO 18643

49. CMI realleges and incorporates by reference paragraphs 1 through 48 above.

50. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

51. SpecSys accepted the Terms and Conditions contained in PO 18643 by beginning performance under PO 18643 without objecting to the Terms and Conditions contained in PO 18643.

52. SpecSys breached the agreement represented by PO 18643 by failing to perform its obligations as set forth in PO 18643.

53. SpecSys' breach of PO 18643 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT III
## BREACH OF CONTRACT—PO 18644

54. CMI realleges and incorporates by reference paragraphs 1 through 53 above.

55. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

56. SpecSys accepted the Terms and Conditions contained in PO 18644 by beginning performance under PO 18644 without objecting to the Terms and Conditions contained in PO 18644.

57. SpecSys breached the agreement represented by PO 18644 by failing to perform its obligations as set forth in PO 18644.

58. SpecSys' breach of PO 18644 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages

relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT IV
## BREACH OF CONTRACT—PO 18645

59. CMI realleges and incorporates by reference paragraphs 1 through 58 above.

60. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

61. SpecSys accepted the Terms and Conditions contained in PO 18645 by beginning performance under PO 18645 without objecting to the Terms and Conditions contained in PO 18645.

62. SpecSys breached the agreement represented by PO 18645 by failing to perform its obligations as set forth in PO 18645.

63. SpecSys' breach of PO 18645 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT V
## BREACH OF CONTRACT—PO 20501

64. CMI realleges and incorporates by reference paragraphs 1 through 63 above.

65. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

66.     SpecSys accepted the Terms and Conditions contained in PO 20501 by beginning performance under PO 20501 without objecting to the Terms and Conditions contained in PO 20501.

67.     SpecSys breached the agreement represented by PO 20501 by failing to perform its obligations as set forth in PO 20501.

68.     SpecSys' breach of PO 20501 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT VI
## BREACH OF CONTRACT—PO 21234

69.     CMI realleges and incorporates by reference paragraphs 1 through 68 above.

70.     Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

71.     SpecSys accepted the Terms and Conditions contained in PO 21234 by beginning performance under PO 21234 without objecting to the Terms and Conditions contained in PO 21234.

72.     SpecSys breached the agreement represented by PO 21234 by failing to perform its obligations as set forth in PO 21234.

73.     SpecSys' breach of PO 21234 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages

relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT VII
## BREACH OF CONTRACT—PO 22015

74. CMI realleges and incorporates by reference paragraphs 1 through 73 above.

75. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

76. SpecSys accepted the Terms and Conditions contained in PO 22015 by agreeing to perform under PO 22015 without objecting to the Terms and Conditions contained in PO 22015.

77. SpecSys breached the agreement represented by PO 22015 by failing to perform its obligations as set forth in PO 22015.

78. SpecSys' breach of PO 22015 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT VIII
## BREACH OF CONTRACT—PO 22016

79. CMI realleges and incorporates by reference paragraphs 1 through 78 above.

80. Each of the Purchase Orders represents a separate contract between CMI and SpecSys.

81. SpecSys accepted the Terms and Conditions contained in PO 22016 by agreeing to perform under PO 22016 without objecting to the Terms and Conditions contained in PO 22015.

82. SpecSys breached the agreement represented by PO 22016 by failing to perform its obligations as set forth in PO 22016.

83. SpecSys' breach of PO 22016 has directly caused damage to CMI, including, but not limited to payments made by CMI pursuant to the terms of the agreement, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the contract, lost profits, and attorney fees.

## COUNT IX
## BREACH OF CONTRACT—NDA

84. CMI realleges and incorporates by reference paragraphs 1 through 83 above.

85. The NDA signed by SpecSys is a contract. The terms and conditions of the contract are set forth in the document.

86. SpecSys has breached the agreement by refusing to return all documents, including the Trade Secrets, covered by the NDA and by claiming ownership to Trade Secrets covered by the NDA.

87. The breach of the NDA has directly caused CMI to sustain damages including but not limited to the costs of bringing an action to enforce the terms of the NDA.

## COUNT X
## NEGLIGENT MISREPRESENTATION/CONSTRUCTIVE FRAUD

88. CMI realleges and incorporates by reference paragraphs 1 through 87 above.

89. SpecSys owed a duty, legal and equitable, of full disclosure to CMI. In fact, a business which has a pecuniary interest cannot supply false information for the guidance of others in their business transactions.

90. SpecSys misstated and failed to disclose facts to CMI. In doing so, SpecSys failed to exercise reasonable care or competence.

91. CMI reasonably relied upon the material misstatements and omissions by SpecSys.

92. CMI suffered damages as a direct result of the material misrepresentations and omissions of SpecSys, including but not limited to pecuniary loss, damages relating to delays in bringing products to the marketplace, costs associated with finding other vendors to perform the work, lost profits, and attorney fees.

## COUNT XI
## INTENTIONAL INTERFERENCE WITH THE EMPLOYMENT OF ENGINEER CHAD HARRISON

93. CMI realleges and incorporates by reference paragraphs 1 through 92 above.

94. Chad Harrison was an engineer employed by CMI.

95. SpecSys worked closely with Mr. Harrison, was aware of his business relationship with CMI, and was aware his presence was needed to complete the Purchase Orders.

96. SpecSys intentionally interfered with the relationship between Mr. Harrison and CMI by improperly and unfairly disparaging the work of Mr. Harrison and suggesting that Mr. Harrison would not be employed at CMI much longer.

97. The actions of SpecSys caused Mr. Harrison to terminate his employment at CMI during a period that was critical to the completion of the Purchase Orders and CMI suffered damages as a result thereof, including additional engineering costs, production delays, lost profits, and attorney fees.

## COUNT XII
## DEFEND TRADE SECRETS ACT (18 U.S.C. §1832 et seq.)

98. CMI realleges and incorporates by reference paragraph 1 through 97 above.

99. CMI Roadbuilding Ltd. is the owner of engineering documents containing trade secrets. CMI Roadbuilding, Inc. has a license to use the engineering documents.

100. The actions of SpecSys in converting the Trade Secrets by retaining the confidential information provided and the documents created from the confidential information provided were not to the economic benefit of CMI Roadbuilding Ltd., the owner of the Trade Secrets, or CMI as licensee of the Trade Secrets.

101. In converting the trade secrets, SpecSys intended and/or knew their actions would injure CMI.

102. The violations described in this Count XIII have and will continue to cause damage and irreparable harm to CMI Roadbuilding Ltd. and CMI.

## COUNT XIII
## OKLA. STAT. TIT. 78, § 85 ET SEQ.
## MISAPPROPRIATION OF TRADE SECRETS

103. CMI realleges and incorporates by reference paragraph 1 through 102.

104. The Trade Secrets comprise proprietary and confidential information that derives independent economic value from not being generally known to CMI Roadbuilding Ltd.'s and licensee CMI's competitors and constitute trade secrets under OKLA. STAT. tit. 78, §

105. CMI Roadbuilding Ltd. and CMI have taken and maintained reasonable efforts to maintain the confidentiality of the Trade Secrets including limiting access to the Trade Secrets, placing proprietary claims of ownership and restrictions on use on the face of the engineering documents containing the Trade Secrets, and entering into the NDA with SpecSys.

106. The actions of SpecSys by retaining the Trade Secrets provided and the documents created from the Trade Secrets constitutes misappropriation by improper means under OKLA. STAT. tit. 78, § 86 (2)(b).

107. The actions of SpecSys in retaining the Trade Secrets provided and the documents created from the Trade Secrets constitutes willful and malicious misappropriation under OKLA. STAT. tit. 78, § 88(B).

108. The actions of SpecSys by retaining the Trade Secrets provided and the documents created from the Trade Secrets by SpecSys has caused and will cause damage to CMI Roadbuilding Ltd and CMI.

**COUNT XIV**
**COMMON LAW CONVERSION**

109. CMI realleges and incorporates by reference paragraph 1 through 108 above.

110. SpecSys exercised dominion and control of the engineering documents owned by CMI Roadbuilding Ltd. and licensed to CMI and the engineering documents created from

the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI by keeping the engineering documents.

111. SpecSys' continued exercise of dominion and control of the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI and the engineering documents created from the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI was without authority and expressly prohibited.

112. SpecSys' continued exercise of dominion and control over the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI and the engineering documents created from the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI interfered with CMI Roadbuilding Ltd.'s and CMI's right to possess and use the engineering documents to the exclusion of others.

113. SpecSys' continued wrongful exercise of dominion and control over the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI and the engineering documents created from the engineering documents owned by CMI Roadbuilding, Ltd. and licensed to CMI injured CMI through lost sales, lost profits, lost good will, and other loss of business assets.

<strong><u>COUNT XV</u></strong><br/><strong><u>TEMPORORARY AND PERMANENT INJUNCTION</u></strong>

114. CMI realleges and incorporates by reference paragraph 1 through 113 above.

115. For SpecSys to perform the services under the Purchase Orders, CMI provided certain Trade Secrets to SpecSys. Before providing the intellectual property to SpecSys, SpecSys signed the NDA with CMI limiting SpecSys' ability to use or disclose to third

parties CMI's intellectual property. Based on the intellectual property provided by CMI, SpecSys states it has developed intellectual property. SpecSys asserts proprietary rights in the intellectual property it developed based on the intellectual property CMI disclosed to SpecSys under the Non-Disclosure Agreement.

116. Unless SpecSys is prevented from retaining the intellectual property it developed based on the Trade Secrets CMI disclosed to SpecSys under the NDA, CMI will be irreparably damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs CMI Roadbuilding, Ltd. and CMI Roadbuilding, Inc. pray: for an Order directing Defendant SpecSys, Inc. to return the Trade Secrets and any documents it prepared relating to the Trade Secrets; and judgment against Defendant SpecSys, Inc. in an amount in excess of $75,000, costs, attorney fees and any further relief which this Court deems just and equitable.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/ J.R. "Randy" Baker
Cary E. Hiltgen, OBA #4219
J.R. "Randy" Baker, OBA #452
HILTGEN & BREWER, P.C.
9505 North Kelley Avenue
Oklahoma City, OK 73131
Telephone: (405) 605-9000
Facsimile: (405) 605-9010
E-mail: chiltgen@hbokc.law
         rbaker@hbokc.law
**Attorneys for Plaintiffs,
CMI Roadbuilding, Ltd. And
CMI Roadbuilding, Inc.**