# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CMI ROADBUILDING, INC.,** and **CMI ROADBUILDING, LTD.** ) ) ) **Plaintiffs,** ) ) **v.** ) ) **SPECSYS, INC.,** ) ) **Defendant.** ) | Case No. CIV-18-1245-G |

## ORDER

Now before the Court is Plaintiffs' Motion to Compel Defendant to Produce Requested Financial Information (Doc. No. 167). Defendant SpecSys, Inc. ("SpecSys") has responded in opposition to the Motion (Doc. No. 177) and Plaintiffs have replied (Doc. No. 187). Plaintiffs have additionally filed a supplemental brief (Doc. No. 198), to which Defendant has responded (Doc. No. 202).[1] The Court makes its determination based on the parties' written submissions.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope of discoverable information:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

---

[1] In accordance with Local Civil Rule 7.1(i), Plaintiffs obtained leave of court prior to filing their supplemental brief. *See* Doc. Nos. 196 and 197. Defendant's response (Doc. No. 202) was filed February 1, 2021, without prior court authorization. Although Defendants' response was filed in violation of Local Civil Rule 7.1(i), the Court has nonetheless considered it prior to issuing this order.

> discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26 (b)(1). The burden to demonstrate relevance rests with the party seeking discovery. *Chrisman v. Bd. of Cty. Comm'rs of Okla. Cty.*, No. CIV-17-1309-D, 2020 WL 7033965, at *2 (W.D. Okla. Nov. 30, 2020).

I. *Miscellaneous Financial Documentation*

Requests for Production Nos. 295 to 310 seek miscellaneous financial documents of SpecSys spanning the years 2015 to 2020, including among other things tax returns, balance sheets, income statements, profit and loss statements, and cash flow statements.[2] Plaintiffs contend such documents are relevant to their claims for breach of contract, fraudulent misrepresentation, and punitive damages. Pl.'s Mot. at 7-12. SpecSys responds that it has already produced "a current balance sheet and profit/loss statement showing its current net worth" and that any further financial information is irrelevant, at least "until the merits of [Plaintiffs'] punitive damage claim [has been] subjected to the summary judgment process." Def.'s Resp. (Doc. No. 177) at 1-2, 4-5.

    A.    <u>Breach of Contract and Fraudulent Misrepresentation</u>

Plaintiffs assert that SpecSys put its own financial condition at issue when its corporate designee testified that SpecSys did not carry out its contractual obligations because it was "in a cash flow bind." Pl.'s Mot at 11-13. Whether SpecSys was "actually

---

[2] *See* Def.'s Resp. to Pl.'s Tenth Set of Request for Production (Doc. No. 167-8), Nos. 295 to 310.

in a cash flow bind," Plaintiffs submit, is relevant to their claims for breach of contract and fraudulent misrepresentation. *Id.* at 12. The Court disagrees.

Plaintiffs make no effort to show how SpecSys' reason for nonperformance is relevant to their contract claims. Prevailing authority suggests that it is not. *See* Matthew A. Cartwright et al., LITIGATING BUSINESS AND COMMERCIAL TORT CASES § 2:4 ("Ordinarily, in a contract action, the sole question on liability is whether or not the contract was breached. The *reasons* for the breach are irrelevant . . .") (emphasis in original).

Nor have Plaintiffs shown relevance with respect to their claim of fraudulent misrepresentation. Plaintiffs argue:

> [B]y agreeing to the Purchase Orders, SpecSys represented that it had the ability to perform the contract under the terms of the Purchase Orders. If SpecSys was in such a precarious financial condition that it could not complete the Purchase Orders under their terms, Plaintiffs are entitled to discover what SpecSys knew of its financial condition before entering the contracts with Plaintiffs, which goes directly to their fraud claim against SpecSys.

Pl.'s Mot. at 12. This argument would be meritorious if Plaintiffs' fraud claim were premised on alleged misrepresentations about SpecSys' financial condition. Plaintiffs' fraud claim is instead premised on alleged misrepresentations about SpecSys' engineering expertise and manufacturing capacity. *See* Am. Compl. (Doc. No. 78), at ¶¶ 19-24, 26, 32, 36, 45, 47, 48, 59, 65, 69, 88, 89. Plaintiffs have not shown—and the Court is unable to independently discern—the relevance of SpecSys' financial condition in the context of such a claim.

3

B.  Punitive Damages

Plaintiffs further contend that SpecSys' financial condition is relevant to their claim for punitive damages and that, "[c]ontrary to SpecSys' position, [such] discovery is not limited to [SpecSys'] current net worth." *See* Pl.'s Mot. at 7-10. The Court agrees that, by virtue of their claim for punitive damages, Plaintiffs are entitled to inquire into SpecSys' financial condition. The Court nonetheless concludes that, at this stage in the litigation, SpecSys has produced sufficient documentation of its financial condition and should not be required to produce further such documentation.

Oklahoma's punitive-damages statute provides that, in assessing an award for punitive damages, the factfinder may consider, among other factors, "[t]he financial condition of the defendant." Okla. Stat. tit. 23, § 9.1(A). While evidence of a defendant's financial condition is indisputably relevant to a claim for punitive damages, courts remain "wary of oppressive or needlessly invasive financial discovery." *Oklahoma, ex rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 10271831, at *5 (N.D. Okla. Mar. 13, 2009); *see also* Wright & Miller, FED. PRACTICE & PROCEDURE (3d ed.) § 2008.4 (explaining that courts should "balance the intrusiveness" of financial discovery "with the value of [such] discovery" in establishing the defendant's financial condition). Thus, the mere existence of a punitive-damages claim does not give a plaintiff carte blanche to probe a defendant's sensitive financial documents.

The scope of permissible financial discovery under Okla. Stat. tit. 23, § 9.1(A) is far from settled. Several courts have drawn a hard and fast line at evidence of a defendant's net worth, reasoning that such evidence "provides adequate information to

4

advise the jury of the wealth of the Defendant so that an appropriate punitive damage award may be determined." *Edmondson*, 2009 WL 10271831, at *5; *accord Hellard v. Mid Century Ins. Co.*, No. 19-CV-43-GKF-FHM, 2020 WL 5865871, at *1 (N.D. Okla. Oct. 1, 2020); *E.E.O.C. v. Midwest Reg'l Med. Ctr., LLC*, No. CIV-13-789-M, 2014 WL 2560704, at *4 (W.D. Okla. June 6, 2014).

Other courts have allowed a broader inquiry. *See, e.g., Emmert Second Ltd. P'ship v. Marshalltown Co.*, No. CIV-10-12-C, 2011 WL 13228383, at *1-2 (W.D. Okla. July 11, 2011) (compelling production of audited financial statements, balance sheets, profit and loss statements, bank statements, tax returns, and income statements); *Smith v. State Farm Mut. Auto. Ins. Co.*, No. CIV-17-1007-C, 2018 WL 4517470, at *2 (W.D. Okla. Sept. 20, 2018) (compelling insurer to produce "financial information pertaining to premiums earned and amounts paid out in Oklahoma claims in the past five years").

A third group of decisions reflect a principle that the scope of discoverable financial information—and the stage at which such information becomes discoverable—should be determined on a case-by-case basis depending, among other things, on the sensitivity of the requested documentation and the plaintiff's likelihood of success on the punitive-damages claim. *See Prescott v. Cracker Barrel Old Country Store, Inc.*, No. CIV-18-121-SLP, 2019 WL 11339790, at *3 (W.D. Okla. Feb. 5, 2019) (limiting production of financial information due, in part, to "the confidential and proprietary nature" of the information requested); *Edmondson*, 2009 WL 10271831, at *3 n.3 (N.D. Okla. Mar. 13, 2009) (noting that "where a punitive damage claim appears to have little merit, it would be appropriate to delay disclosure of financial information until the claim is tested by

dispositive motion"); *Toussaint-Hill v. Montereau in Warren Woods*, No. 07-CV-179 GKF/SAJ, 2007 WL 3231720, at *1 (N.D. Okla. Oct. 29, 2007) (holding that, under the circumstances presented, production of financial information "is appropriate only after a dispositive ruling on the issue of punitive damages").

SpecSys urges the Court to postpone further financial discovery "until the merits of [Plaintiffs'] punitive damage claim [has been] subjected to the summary judgment process."[3] Def.'s Resp. at 1-2, 4-5. The Court finds SpecSys' proposal to be a reasonable one, particularly in light of the fact that SpecSys has already produced documentation showing its net worth, which, according to several opinions within this Circuit, is the entirety of Plaintiffs' prerogative to begin with.

Accordingly, the Court DENIES Plaintiffs' Motion to Compel Defendant to Produce Requested Financial Information (Doc. No. 167) to the extent Plaintiffs seek further documentation in response to Requests for Production Nos. 295 to 310. This denial is without prejudice to Plaintiffs' resubmission of a motion to compel following adjudication of Defendant's forthcoming motion, or, if no such motion is filed, following the deadline for dispositive motions.

II.  *Documentation of the Financial Relationship Between SpecSys and Ritalka, Inc.*

Requests for Production Nos. 142, 143, 145, 146, 188, 190, and 191 seek documents illuminating the financial relationship between SpecSys and its parent

---

[3] On February 19, 2021, SpecSys moved for summary judgment on Plaintiffs' tort claims, arguing, among other things, that Plaintiffs are not entitled to recover punitive damages as a matter of law. Def.'s Br. in Supp. of Mot. for Partial Summ. J. No. 2 (Doc. No. 239) at 23-25.

company, Ritalka, Inc. ("Ritalka").[4] Plaintiffs assert they propounded these Requests in response to "[e]vidence developed during discovery establish[ing] [that] [Ritalka] controls the finances and operation of SpecSys and in many instances employs personnel who performed work on Plaintiffs' projects." Def.'s Resp. at 1-2. Plaintiffs contend they are entitled to production of "documents relating to SpecSys' work performed on behalf of Plaintiffs and how Ritalka treats and accounts for work performed by or on behalf of SpecSys." Pl.'s Mot. at 2. At a minimum, Plaintiffs seek documentation showing Ritalka's "monthly corporate charges" to SpecSys, as well as unaltered copies of certain "revenue spreadsheets." *Id.* at 5; Pl.'s Supp. (Doc. No. 198), at 1-2.[5]

The Court finds that Plaintiff has not established the relevance of the requested documentation. "[A] holding or parent company has a separate corporate existence" and should thus be "treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Cf. Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004). Plaintiffs submit that the requested documentation is probative of "SpecSys' and Ritalka's financial condition," which in turn is probative of why SpecSys

---

[4] *See* Def.'s Resp. to Pl.'s Fifth Set of Request for Production (Doc. No. 167-5), Nos. 142, 143, 145, and 146; Def.'s Resp. to Pl.'s Sixth Set of Requests for Production (Doc. No. 167-6), Nos. 188, 190, and 191.

[5] On or about January 28, 2021, SpecSys produced a number of the revenue spreadsheets at issue. Plaintiffs contend the spreadsheets were altered and demand that they be produced "without alteration." Pl.'s Supp. (Doc. No. 198), at 1-2. SpecSys responds that the spreadsheets were "exchanged in their native format of Excel" in "Read Only" format and were not substantively altered before production. Def's Resp. to Supp. (Doc. No. 202), at 1-2.

did not fulfill its contractual obligations to Plaintiffs.[6]  Pl.'s Mot. at 2; *see also id.* at 6, 11-13.  But, as explained above, Plaintiffs have not shown that SpecSys' reason for nonperformance is relevant to any of their claims.

Accordingly, the Court DENIES Plaintiffs' Motion to Compel Defendant to Produce Requested Financial Information (Doc. No. 167) to the extent Plaintiffs seek further documentation in response to Requests for Production Nos. 142, 143, 145, 146, 188, 190, and 191.

IT IS SO ORDERED this 5th day of March, 2021.

_____
CHARLES B. GOODWIN
United States District Judge

---

[6] Plaintiffs do not argue that the monthly corporate charges and/or revenue spreadsheets are relevant to their claim for punitive damages.