## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CMI ROADBUILDING, INC., and | ) | |
| CMI ROADBUILDING, LTD. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. CIV-18-1245-G |
| | ) | |
| SPECSYS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court are the following motions: (1) Defendant's Motion for Partial Summary Judgment No. 3 (Doc. No. 240) and related briefs (Doc. Nos. 241, 289, and 297); (2) Defendant's Motion for Partial Summary Judgment No. 4 (Doc. No. 242) and related briefs (Doc. Nos. 243, 291, and 298); (3) Defendant's Motion for Partial Summary Judgment No. 5 (Doc. No. 244) and related briefs (Doc. Nos. 245, 286, and 299); (4) Plaintiffs' Motion for Partial Summary Judgment on Count XVI (Doc. No. 221) and related briefs (Doc. Nos. 222, 276, and 309); and (5) Plaintiffs' Motion for Partial Summary Judgment on Counts XI, XIV, and XV (Doc. No. 231) and related briefs (Doc. Nos. 232, 281 and 314). The Court makes its decision based on the parties' written submissions.

### BACKGROUND

This lawsuit stems from a series of purchase orders whereby Defendant SpecSys, Inc. ("SpecSys") agreed to manufacture mobile equipment and provide related design and engineering services to Plaintiff CMI Roadbuilding, Inc. ("CMI"). The business

relationship soured, resulting in claims and counterclaims, including, as relevant to the Motion under review, Plaintiffs' claims for accounting, conversion, breach of the parties' confidentiality and nondisclosure agreements, misappropriation of trade secrets, and injunctive relief.  *See* Am. Compl. (Doc. No. 78) ¶¶ 142-156, 171-193.

I.    *The Confidentiality Agreement and NDA*

Each purchase order includes a "Confidentiality" provision (collectively, the "Confidentiality Agreement"), which: (1) prohibits SpecSys from disclosing CMI's "confidential" information "to any other person" without CMI's "express written consent"; and (2) obligates SpecSys to exercise "reasonable care to prevent the unauthorized disclosure or use of" such information.  Doc. Nos. 78-16 at 7; 78-26 at 12; 78-26 at 12, 15, 19; 78-33 at 5; 78-36 at 9; 78-46 at 5, 9.

The parties likewise executed a Confidentiality and Non-Disclosure Agreement ("NDA") governing the exchange of "confidential and proprietary information and material."  *See* Doc. No. 78-9 at 3-5.  The term "Confidential Information" will be used herein in collective reference to the information protected under the Confidentiality Agreement and the NDA.

The NDA requires SpecSys "to use reasonable means . . . to safeguard" CMI's Confidential Information.  *Id.* at 3.  It further prohibits SpecSys from "us[ing] (for its own benefit or the benefit of any third party), disclos[ing] . . . or otherwise mak[ing] available to any third party" any Confidential Information "without [CMI's] prior written consent."  *Id.*  This prohibition is subject to an exception, which permits SpecSys to disclose CMI's Confidential Information to "Representatives" of SpecSys who "have a need to know"

2

such information and who "have been provided with a copy of [the NDA] and have agreed to be bound by the same or similar terms." *Id.* The term "Representatives" is defined to mean "directors, officers, employees, agents or advisors" of SpecSys. *Id.*

Paragraph 5 of the NDA includes an acknowledgement that the Confidential Information is "proprietary to CMI" and that "[n]o right, license or ownership interest, of any kind, express or implied, is granted by CMI [] to [SpecSys] in the [Confidential] Information. *Id.* at 4. The NDA further states, in Paragraph 3:

> In the event that [SpecSys] shall at any time create, discover, conceive, make, invent or reduce to practice any invention, modification, discovery, design, development, process or intellectual property right whatsoever or any interest therein . . . result[ing] from exposure to the [Confidential] Information, then all such [d]evelopments and the benefits thereof are and shall immediately become the sole and absolute property of CMI.

Paragraph 9 of the NDA addresses disposition of CMI's Confidential Information acquired by SpecSys. It provides, in relevant part:

> Upon expiration or earlier termination of this Agreement, or earlier if requested by [CMI], [SpecSys] will promptly deliver to [CMI] all tangible copies of the [Confidential] Information, including but not limited to magnetic or electronic media containing the [Confidential] Information, compact discs, spreadsheets, note(s) and parpers(s) in whatever form containing the [Confidential] Information or parts thereof, and any other copies of the [Confidential] Information in whatever form, which are in possession of [SpecSys] and its Representatives. [CMI], at its sole option, may request in writing that [SpecSys] destroy all such copies of the Information.

*Id.*

Finally, Paragraph 4 specifies injunctive relief as an appropriate remedy in the event SpecSys discloses CMI's Confidential Information:

> [SpecSys] and its Representatives recognize that its disclosure of

3

[Confidential] Information will give rise to irreparable injury to CMI [], inadequately compensable in damages, and that, accordingly, CMI [] may seek and obtain injunctive relief against the breach of the within undertakings, in addition to any other legal remedies which may be available.

*Id.*

Following execution of the NDA, CMI sent SpecSys engineering documents containing Confidential Information (the "Engineering Documents"). Am. Compl. ¶¶ 33, 41, 53, 56, 62, 66; Answer (Doc. No. 82) ¶¶ 33, 41, 53, 56, 62, 66; Pls.' Br. (Doc. No. 232) at 3; Def.'s Resp. Br. (Doc. No. 281) at 9-10. It is undisputed that the Engineering Documents were transmitted to, and maintained by, SpecSys in electronic format. Def.'s Br. (Doc. No. 245) at 10; Pls.' Resp. Br. (Doc. No. 286) at 3; Def.'s Br. (Doc. No. 243) at 20-21. SpecSys used the Confidential Information to create new engineering documents, software code, and other intellectual property (collectively, the "Intellectual Property"), as described in greater detail below. Am. Compl. ¶¶ 41, 56, 63, 80; Answer ¶¶ 41, 56, 63, 80; Pls.' Br. (Doc. No. 232) at 5.

## II. *Purchase Order 17580*

The parties' first transaction is memorialized by Purchase Order 17580 ("PO 17580"), dated January 11, 2018, pursuant to which SpecSys agreed to manufacture and assemble four TR-4 machines[1] for CMI. *See* Doc. No. 78-16 at 2-11. Pursuant to PO 17580, CMI was to supply SpecSys with certain Engineering Documents in addition to various materials and component parts—i.e., "the cutter drum, track assemblies, wire

---

[1] The TR-4 is a machine used to trim the road base prior to the pouring of pavement. Am. Compl. ¶ 35.

harnesses, [and] engine skid/power pack" (collectively, the "Purchased Items").[2]  Doc. No. 78-16 at 2; *see also* Doc. No. 78-14 at 3.  SpecSys was responsible for buying the remaining "raw material and hardware" required for assembly and for providing all necessary labor, management, and quality control.  Doc. No. 78-16 at 2, 8.

The total purchase price under PO 17580 was $800,000, comprised of $231,152 for the first TR-4 machine and $189,616 for each of the remaining TR-4 machines.  *Id.* at 5.  With respect to each machine, CMI agreed to pay 30% of the purchase price as a down payment, 20% each month for a three-month period, and the remaining 10% upon delivery and inspection.  *Id.*  The parties further agreed:

> The total price of $800,000 is contingent upon CMI releasing for manufacture all four (4) units within twelve (12) months from the completion and delivery of Unit 1.  In the event units 2, 3, [and] 4 are not released within this time period, CMI will reimburse SpecSys the amount of $67,500.00.  Unit prices are based on preliminary estimate for raw materials and hardware of $30,000 cost with any increase considered and approved in advance of purchase by CMI.

*Id.* at 3.

It is undisputed that CMI has paid SpecSys a total of $303,609.73 under PO 17580.  The parties disagree, however, as to the appropriate allocation of such payments.  CMI alleges it has paid $216,608.42 towards the first TR-4 machine and $87,001.31 towards the second machine.  Am. Compl. ¶ 43.  SpecSys, on the other hand, contends that CMI has paid $174,807.73 towards the first TR-4 machine, $65,467.74 for services on the

---

[2] CMI asserts that it spent $608,270.15 to purchase and $16,558.14 to ship the Purchased Items to SpecSys.  Pls.' Br. (Doc. No. 222) at 3, 6.  SpecSys contends that several of the items CMI was obligated to supply were "actually purchased by SpecSys . . . in order to keep the project moving forward."  Def.'s Resp. Br. (Doc. No. 276) at 9.

second machine, $63,334.26 towards "raw materials and hardware," and $2,025 towards a subsequent "hydraulics plumbing change order."  Answer (Doc. No. 82) ¶ 43.

It is further undisputed that SpecSys has not delivered any TR-4 machines to CMI. CMI alleges that "SpecSys has yet to complete a single TR-4" and that PO 17580 was merely a pretense "to generate billings" for work that SpecSys never intended to perform. Am. Compl. ¶¶ 43-44; *see also* Pls.' Resp. Br. (Doc. No. 291) at 5.  SpecSys, for its part, asserts that it is currently "in possession of a completed TR-4 (Unit #1) and a partially completed TR-4 (Unit #2) that it built pursuant to [PO] 17580."  Def.'s Br. (Doc. No. 243) at 12; *see also* Def.'s Resp. Br. (Doc. No. 276) at 10.  SpecSys argues that it "is justified in retaining" these machines as a lienholder in possession because "CMI still owes SpecSys $262,540.97 for work and materials" provided under PO 17580.[3]  Answer ¶ 43; *see also* Def.'s Br. (Doc. No. 243) at 12.

III.    *The Authorization Letter*

On March 14, 2018, SpecSys' Dave Gelhar emailed CMI's Les Bebchick requesting "a blanket letter that allows SpecSys to buy CMI proprietary components" from vendors.  Doc. No. 281-11 at 1.  In response, CMI supplied SpecSys with the following (the "Authorization Letter"):

---

[3] SpecSys elsewhere asserts that CMI's outstanding balance under PO 17580 is $202,540.97.  Def.'s Resp. Br. (Doc. No. 276) at 8.

March 14, 2018

TO WHOM IT MAY CONCERN

Subject:  Proprietary CMI Roadbuilding/Terex Parts and Components

Please be advised that CMI Roadbuildinf/ Terex authorizes you and provides permission for your Company to release information, pricing, and availability on the products we buy from you and that are covered by our NDA to SpecSys Engineering and Manufacturing.

If you have any questions in this regard, please contact the undersigned.

Very truly yours,

Les.bebchick@cmi-roadbuilding.com
Executive Advisor
CMI Roadbuilding, Inc.

Doc. No. 281-10 at 2.  SpecSys thereafter transmitted certain Engineering Documents containing Confidential Information to at least four different vendors supplying parts needed to assemble TR-4 machines under PO 17580.  Pls.' Br. (Doc. No. 232) at 3-4; Resp. Br. (Doc. No. 281) at 11-12.  Before transmitting the documents, SpecSys redacted CMI Ltd.'s name and logo.  Pls.' Br. (Doc. No. 232) at 4; Def.'s Resp. Br. (Doc. No. 281) at 12.

IV.    *Purchase Orders 18643, 20501, 22015, and 22016*

On March 2, 2018, CMI issued Purchase Order 18643 ("PO 18643") pursuant to which SpecSys agreed to perform engineering updates to the concept design for CMI's

TP-4 machine.[4]  *See* Doc. No. 78-26 at 9-12.  Pursuant to PO 18643, CMI was to supply SpecSys with certain Engineering Documents, and SpecSys was to deliver to CMI updated concept design documentation.  *Id.* at 2, 4.

It is undisputed that the total amount of PO 18643 was $225,742, that CMI has paid $119,512.37 towards that sum, and that SpecSys has yet to remit any deliverables related to the TP-4.  *See* Am. Compl. ¶ 54; Answer ¶ 54.  It is further undisputed that, with CMI's consent, SpecSys purchased certain long-lead materials for a TP-4 prototype. *See* Def.'s Br. (Doc. No. 241) at 10; Pls.' Resp. Br. (Doc. No. 289) at 4.  SpecSys contends that CMI still owes it $106,229.63 on PO 18643 for engineering services and $111,539.93 for the long-lead materials.  Answer ¶ 54.  SpecSys asserts that, pending CMI's payment of outstanding invoices, it is justified in retaining the long-lead materials, as well as final prints it created for the TP-4 design under PO 18643, under a claim of possessory lien. *Id.*; Def.'s Br. (Doc. No. 243) at 12-13, 17.

On May 24, 2018, CMI issued Purchase Order 20501 ("PO 20501") in the amount of $182,400, pursuant to which SpecSys agreed to provide "engineering manpower" for the support and design of various CMI mobile equipment over a three-month period.  *See* Doc. No. 78-33 at 2-5.  It is undisputed that CMI has paid just under $41,000 towards PO 20501[5] and that SpecSys is withholding delivery of software code it created pursuant to

---

[4] "The TP-4 is [a machine] used to place concrete on a road base to be formed by a slip-form paver."  Am. Compl. ¶ 47.

[5] CMI alleges that it has paid $40,945 towards PO 20501, Am. Compl. ¶ 63, while SpecSys contends CMI has paid $40,925 towards PO 20501, Answer ¶ 63.

PO 20501 pending CMI's payment of outstanding invoices.[6]  *See* Am. Compl. ¶ 63; Answer ¶ 63; Def.'s Br. (Doc. No. 243) at 17.

On August 30, 2018, CMI issued Purchase Order 22015 ("PO 22015") in the amount of $121,481, pursuant to which SpecSys agreed to develop, test, and debug software and controls on CMI's SP-5 machine and provide related engineering services and documentation.  *See* Doc. No. 78-46 at 2-5.  It is undisputed that CMI has not made any payments towards PO 22015 and that SpecSys is withholding delivery of software code it created pursuant to PO 22015 pending CMI's payment of outstanding invoices. *See* Def.'s Br. (Doc. No. 243) at 12, 17; Pls.' Resp. Br. (Doc. No. 291) at 6.

On August 30, 2018, CMI issued Purchase Order 22016 ("PO 22016") in the amount of $121,481, pursuant to which SpecSys agreed to develop, test, and debug software and controls on CMI's TM-11 machine and provide related engineering services and documentation.  *See* Doc. No. 78-46 at 6-9.  It is undisputed that CMI has not made any payments towards PO 22016 and that SpecSys is withholding delivery of software code it created pursuant to PO 22016 pending CMI's payment of outstanding invoices. *See* Def.'s Br. (Doc. No. 243) at 12, 17; Pls.' Resp. Br. (Doc. No. 291) at 6.

V.    *Termination of the Parties' Relationship and Ensuing Litigation*

By September 19, 2018, the parties' relationship had deteriorated to the point that CMI directed SpecSys to stop work on nearly all active purchase orders.  Am. Compl. ¶ 79; Answer ¶ 79; Doc. No. 78-51.  On September 23, 2018, CMI's Les Bebchick

---

[6] According to SpecSys, CMI still owes $142,194.97 on PO 20501: "$141,455.00 in engineering services and $739.97 for RM-6 valves."  Answer ¶ 63.

emailed SpecSys' Chief Executive Officer Kevin Wald stating, in relevant part: "[P]lease advise us when you will have all engineering documents, analysis, software, drawings new and old including all marked up and corrected drawings, data, etc. to evidence and document the efforts to date that we have already paid for and that you are ready to transfer them to CMI."  Doc. No. 232-14 at 1.

The parties soon became embroiled in a dispute about: (1) what amounts, if any, are due and owing under outstanding invoices; and (2) what items, if any, SpecSys is obligated to turn over to CMI.  The dispute blossomed into the current lawsuit, which was filed on December 20, 2018, by CMI and its parent company CMI Roadbuilding, Ltd.[7] (collectively, "Plaintiffs").

It is undisputed, for purposes of the Motions under review, that SpecSys has in its possession: (1) two partially complete TR-4 machines; (2) electronic copies of Engineering Documents containing CMI's Confidential Information; and (3) Intellectual Property that SpecSys created using CMI's Confidential Information.

### SUMMARY JUDGMENT STANDARD

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[7] CMI Roadbuilding, Ltd. allegedly owns the Confidential Information on which the lawsuit is based.  Am. Compl. ¶ 9.

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 243, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

With respect to cross-motions for summary judgment, the Tenth Circuit has

11

explained:

> The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted. Accordingly, cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citations and internal quotation marks omitted).

ACCOUNTING

Defendants move for summary judgment on Plaintiffs' claim for equitable accounting.[8] *See* Def.'s Mot. (Doc. No. 242). Plaintiffs seek an accounting with respect to: (1) "all goods and materials" CMI provided to SpecSys or for which SpecSys invoiced CMI pursuant to the purchase orders (e.g., whether and to what extent such goods and materials "were incorporated into the equipment SpecSys was to manufacture for CMI"); and (2) all "monies paid [by CMI to SpecSys] on each Purchase Order" (i.e., "where [such] monies . . . were expended"). Am. Compl. ¶¶ 142-151.

Under Oklahoma law, a claim for equitable accounting is comprised of four

---

[8] Under Oklahoma law, a claim for accounting may be legal or equitable. *Margaret Blair Trust v. Blair*, 378 P.3d 65, 72-74 (Okla. Civ. App. 2016). A claim for legal accounting seeks to enforce a duty created by contract or fiduciary status. *Id.* at 72. Equitable accounting, by contrast, is available "where the plaintiff lacks a legal right to an accounting, but an accounting is the only available means to an adequate remedy." *Id.* at 73. Plaintiffs' intent to pursue a claim for equitable accounting is evident from their response brief. *See* Pls.' Resp. Br. (Doc. No. 291) at 10 (listing the elements of a claim for equitable accounting); *id.* at 13 (arguing that SpecSys has not shown why its claims for possessory liens preclude "the *equitable* remedy of an accounting") (emphasis added).

elements: (1) the existence of a "confidential relationship" between the plaintiff and defendant; (2) the defendant's control over the plaintiff's property and related records; (3) the defendant's failure to "account [for] or return the property" after a demand by the plaintiff; and (4) the absence of an "adequate remedy at law." *Howell Petrol. Corp. v. Leben Oil Corp.*, 976 F.2d 614, 620 (10th Cir. 1992). To succeed on the claim, the plaintiff "must produce evidence that a balance is due." *Id.* SpecSys argues—and the Court agrees—that Plaintiffs have not shown they lack an adequate remedy at law.[9] Def.'s Br. (Doc. No. 243) at 18-19.

"The long-standing rule in Oklahoma is that a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012, 1022 (Okla. 2013); *see also Robertson v. Maney,* 166 P.2d 106, 108 (Okla. 1946) ("[W]here the plaintiff has a plain, speedy and adequate remedy at law, equity will not intervene in his behalf."). As relevant here, "[a] claim for breach of contract provides such a remedy." *Krug*, 320 P.3d at 1022; *see also Reirdon v. Cimarex Energy Co.*, No. CIV-16-445, 2019 WL 2610115, at *3 (E.D. Okla. June 25, 2019) (holding that plaintiff's claim for breach of contract was an adequate remedy at law precluding plaintiff's claim for equitable accounting); *Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2011 WL 13113453, at *1 (W.D. Okla. Aug. 12, 2011) (same).

In this lawsuit, Plaintiffs have asserted nine separate contract claims against SpecSys: one for breach of the Confidentiality Agreement and NDA and one for breach

---

[9] Finding this argument to be dispositive, the Court does not reach the alternative grounds advanced by SpecSys.

of each of eight purchase orders.[10]  *See* Am. Compl. ¶¶ 93-141, 152-56.  Plaintiffs have

neither explained nor identified any evidence suggesting that these claims, alone or in

combination, provide an inadequate remedy for their alleged injuries.  Plaintiffs' sole

argument in this regard is based on a misconstruction of the following provision in the

NDA:

> [SpecSys] and its Representatives recognize that its disclosure of
> [Confidential] Information will give rise to irreparable injury to CMI [],
> inadequately compensable in damages and that, accordingly, CMI
> Roadbuilding may seek and obtain injunctive relief against the breach of
> the within undertakings, in addition to any other legal remedies which
> may be available.

Pls.' Resp. Br. (Doc. No. 291) at 7 (citing Doc. No. 243-19).

Contrary to Plaintiffs' assertion, the foregoing language does not constitute a

concession by SpecSys that a breach-of-contract claim is an *inadequate remedy* for

violation of the NDA or any of the purchase orders.  It is instead an acknowledgement by

SpecSys that the disclosure of CMI's Confidential Information will cause *irreparable*

*injury* for purposes of obtaining injunctive relief.  At any rate, the provision is, by its

terms, irrelevant to Plaintiffs' accounting claim, which is not predicated on any alleged

"disclosure" of Confidential Information.

---

[10] Apart from the five purchase orders detailed above, the parties executed three
additional purchase orders, which, while relevant in the broader context of this lawsuit,
are not relevant to the claims at issue in this order: (1) Purchase Order 18644, dated March
2, 2018, whereby SpecSys agreed to create a manual for the TR-4 machine (Doc. No. 78-
26 at 13-15); (2) Purchase Order 18645, dated March 2, 2018, whereby SpecSys agreed
to provide control support services related to the TR-4 and TP-4 projects (Doc. No. 78-
26 at 16-19); and (3) Purchase Order 21234, dated July 10, 2018, whereby SpecSys
agreed to manufacture various wiring harnesses for CMI (Doc. No. 78-36 at 3-9).

The Court therefore concludes that SpecSys is entitled to summary judgment on Plaintiffs' claim for equitable accounting.

CONVERSION

The parties each seek summary judgment on Plaintiffs' claim for conversion. *See* Def.'s Mot. (Doc. No. 242); Pls.' Mot. (Doc. No. 221). "Conversion is defined by Oklahoma law as 'any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 825 (Okla. 2016).

Plaintiffs allege conversion of: (1) the two partially complete TR-4 machines and the Purchased Items to the extent they are not incorporated into the TR-4 machines; and (2) the Engineering Documents CMI provided to SpecSys. Am. Compl. ¶¶ 182-90.

A.     The TR-4 Machines and Purchased Items

Conversion requires "some form of *wrongful* possession or act of control over the property" in question. *Am. Biomedical Grp.*, 374 P.3d at 825 (internal quotation marks omitted) (emphasis added). Thus, "[a]n individual with authority to possess property is not liable in tort for the property's conversion." *Eaton v. Okla. Cnty. Sheriff's Dep't*, No. CIV-06-566-M, 2007 WL 2703153, at *5 (W.D. Okla. Sept. 13, 2007) (holding that sheriff's statutory authority to tow and impound plaintiff's vehicle "negate[d] an essential element of [p]laintiff's claim for conversion"—namely, the "authorized assumption of control" over the vehicle), *aff'd sub nom. Eaton v. Whetsel*, 283 F. App'x 599 (10th Cir. 2008).

SpecSys contends it is authorized to retain the TR-4 machines, inclusive of the

Purchased Items, pursuant to Okla. Stat. tit. 42, § 91A and Okla. Stat. tit. 12A, § 2-703.[11]

Def.'s Br. (Doc. No. 243) at 15.  Okla. Stat. tit. 42, § 91A provides that one who, "while

lawfully in possession" of another's personal property, supplies "material, labor or skill"

for the improvement of such property "has a special lien thereon, dependent on

possession, for the compensation, if any, which is due to such person."  Okla. Stat. tit.

42, § 91A(A)(2).  Okla. Stat. tit. 12A, § 2-703 permits a seller of goods to "withhold

delivery of such goods" if, among other things, the buyer "fails to make a payment due

on or before delivery or repudiates with respect to a part or the whole."  Okla. Stat. tit.

12A, § 2-703(a).

　　SpecSys has evinced a plausibly lawful basis for retaining the TR-4 machines and

Purchased Items under Okla. Stat. tit. 42, § 91A[12] and/or Okla. Stat. tit. 12A, § 2-703.  It

---

[11] Alternatively, SpecSys claims to hold a lien pursuant to Okla. Stat. tit. 42, § 91.  Def.'s
Br. (Doc. No. 243) at 15.  Section 91 applies only where the property at issue has "a
certificate of title issued by the Oklahoma Tax Commission or by a federally recognized
Indian tribe in the State of Oklahoma."  Okla. Stat. tit. 42, § 91.  Because neither party
contends that the T-4 machine has a certificate of title, § 91A—not § 91—is the
applicable statute.  *See Blue Sky Telluride, L.L.C. v. Intercontinental Jet Serv. Corp.,* 328
P.3d 1223, 1228 (Okla. Civ. App. 2014) (explaining that § 91A is "a catch-all provision
intended to govern possessory liens on items of personal property which do not fall under
either §§ 91 or 91.2").

[12] The Court rejects Plaintiffs' argument that § 91A is inapplicable because SpecSys did
not comply with the recording requirement of Okla. Stat. tit. 42, § 98.  Pls.' Resp. (Doc.
No. 291) at 13-14.  Section 98's recording requirement is not a substantive element of a
claim of possessory lien.  *See McCormack v. Air Ctr., Inc.*, 571 P.2d 835, 838 (Okla.
1977) (explaining that § 98 embodies a procedural requirement for perfection of a lien—
not a substantive element of entitlement to a claim of lien); *Williamson v. Winningham*,
186 P.2d 644, 651 (Okla. 1947) ("Where possession is actually, or in the eyes of the law,
retained . . . a lien of the common law exists and endures without the necessity of filing
a lien statement . . . .  The filing of [a lien] statement is necessary to preserve the lien only

16

is undisputed that SpecSys purchased materials and provided labor in furtherance of PO

17580 and that CMI has paid some—but not all—of the purchase amount contemplated

thereunder.  However, there remain several disputed factual issues bearing on SpecSys'

right to retain the property in question, including, but not limited to, the validity and scope

of the claimed liens, whether and to what extent the Purchased Items were incorporated

into the TR-4 machines, whether and to what extent work performed under PO 17580

remains unpaid, and whether and to what extent CMI must reimburse SpecSys for

materials SpecSys purchased on CMI's behalf.

The Court thus concludes that neither party is entitled to summary judgment on

Plaintiffs' claim for conversion of the TR-4 machines and Purchased Items.  *See*

*Vaseleniuck Engine Dev., LLC v. Sabertooth Motorcycles, LLC*, 727 S.E.2d 308, 311

(N.C. Ct. App. 2012) (holding that summary judgment on defendant's conversion claim

was improper because there existed a genuine issue of material fact as to whether plaintiff

had a valid possessory lien over engines in its possession).

B.     The Engineering Documents

"The general rule in Oklahoma is that only *tangible personal property* may be

converted."  *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla. 1992)

(emphasis in original); *see also Am. Biomedical Grp.*, 374 P.3d at 825.  SpecSys argues,

among other things, that the Engineering Documents are intangible intellectual property

and are not, therefore, the proper subject of a conversion claim.  Def.'s Br. (Doc. No.

_____

as against the priority of other liens in the absence of lienor's rightful possession.").

17

243) at 20-21.  The Court agrees.[13]

Tangible property "is '[p]roperty that has physical form and substance'"; it "may be felt or touched, and is necessarily corporeal." *U.S. ex rel. MMS Constr. & Paving, L.L.C. v. Head, Inc.*, No. CIV-10-1340-M, 2011 WL 4954021, at *3 (W.D. Okla. Oct. 18, 2011) (citing *Black's Law Dictionary* (6th ed. 1990)).  Intangible property, by contrast, "has no intrinsic or marketable value, but is merely the representative or evidence of value." *Id.* (internal quotation marks omitted); *see also Intellectual Property*, *Black's Law Dictionary* (11th ed. 2019) (defining intellectual property as "[a] category of intangible rights protecting commercially valuable products of the human intellect").

The undisputed facts reflect that the Engineering Documents, consisting entirely of electronically stored files and data, are, as a matter of law, intangible property not subject to conversion.  *See State Auto Prop. & Cas. Ins. Co. v. Midwest Computs. & More*, 147 F. Supp. 2d 1113, 1116 (W.D. Okla. 2001) (holding that computer-stored data "is not tangible property"; reasoning that "[a]lthough the medium that holds the information can be perceived, identified or valued, the information itself . . . cannot be touched, held, or sensed by the human mind"); *MMS Constr. & Paving*, 2011 WL 4954021 at *3 (holding that plaintiff's asphalt mix design formula was intangible property not capable of conversion); *Architects Collective v. Gardner Tanenbaum Grp., L.L.C.*, No. CIV-08-1354-D, 2009 WL 3919514, at *3 (W.D. Okla. Nov. 18, 2009) (rejecting plaintiff's argument that written documents containing alleged intellectual

---

[13] Finding this argument to be dispositive, the Court does not reach the alternative grounds advanced by SpecSys.

property constituted "tangible property" for purposes of plaintiff's conversion claim; reasoning that plaintiff's allegations were "logically construed as alleging conversion of intangible copyrighted intellectual property").

Accordingly, the Court concludes that SpecSys is entitled to summary judgment on Plaintiffs' claim for conversion of the Engineering Documents.

BREACH OF THE CONFIDENTIALITY AGREEMENT AND NDA

The parties each move for summary judgment on Plaintiffs' claim for breach of the Confidentiality Agreement and NDA.  *See* Def.'s Mot. (Doc. No. 244); Pls.' Mot. (Doc. No. 231).  Plaintiffs assert that SpecSys breached these agreements in four ways: (1) by disclosing Confidential Information to third-party vendors without prior written authorization from CMI; (2) by "claiming ownership" of CMI's Confidential Information; (3) by refusing to return to CMI the Engineering Documents containing Confidential Information; and (4) by refusing to deliver to CMI the Intellectual Property created using Confidential Information.  Am. Compl. ¶ 155; *see also* Pls.' Br. (Doc. No. 232) at 6-8.

A.      Disclosure of Confidential Information

It is undisputed that SpecSys disclosed Confidential Information to vendors supplying parts in furtherance of PO 17580.  Pls.' Br. (Doc. No. 232) at 3-4; Def.'s Resp. Br. (Doc. No. 281) at 11-12.  Plaintiffs contend that such disclosures violated the Confidentiality Agreement and NDA because they were not authorized in writing by CMI.  Pl.'s Br. (Doc. No. 232) at 6-8.  SpecSys offers two arguments in response.

SpecSys first argues that the vendors are "Representatives" as that term is used in

the NDA and, therefore, the disclosures did not require preauthorization by CMI.  Def.'s

Resp. Br. (Doc. No. 281) at 16-17.  According to SpecSys, the parties contemplated that

SpecSys would need to disclose Confidential Information to vendors and accounted for

that need by permitting the disclosure of such information to "Representatives" with a

"need to know [it]," subject to certain conditions.  Def.'s Resp. Br. (Doc. No. 281) at 16-

17 (citing Doc. No. 78-9 at 3); *see also* Def.'s Br. (Doc. No. 245) at 21.  Plaintiffs resist

the conclusion that the vendors qualify as "Representatives" under the NDA, but neither

party offers any meaningful argument or evidence to support its respective position.  *See*

Pls.' Resp. Br. (286) at 13-14; Pls.' Reply Br. (Doc. No. 314) at 6-7.

        As noted, the NDA defines "Representatives" as "directors, officers, employees,

agents or advisors" of SpecSys.  Doc. No. 78-9 at 3.  Arguably, the vendors qualify as

"agents" or "advisors" of SpecSys with respect to PO 17580.  Whether they in fact so

qualify presents a question of contract construction, which, in the absence of meaningful

advocacy, the Court will not endeavor to resolve on summary judgment.  *See Voda v.*

*Medtronic Inc.*, 899 F. Supp. 2d 1188, 1199 n.20 (W.D. Okla. 2012) ("Arguments that

are not developed are deemed waived"), *aff'd,* 541 F. App'x 1003 (Fed. Cir. 2013);

*Beckham Cnty. Rural Water Dist. No. 3 v. City of Elk City*, No. CIV-05-1485-F, 2014

WL 12818160, at *13 (W.D. Okla. Mar. 28, 2014) (declining "to undertake the research,

to say nothing of the advocacy, necessary to support" the parties' "contentions [that]

[were] not supported by developed argument").

        SpecSys' second argument is that CMI authorized and/or ratified the disclosures

of Confidential Information to the vendors.  Def.'s Resp. Br. (Doc. No. 281) at 16-17.

To support this argument, SpecSys points to the Authorization Letter, as well as deposition testimony and a number of written communications indicating that CMI knew about and acquiesced in SpecSys' disclosure of Confidential Information to vendors.[14] *See* Doc. Nos. 245-4, at 5-6, 245-5, at 5, 281-9, 281-10, 281-11, 281-12, 281-13; 313-3 (filed under seal).

Plaintiffs, for their part, urge a narrow reading of the Authorization Letter. They admit that CMI consented to SpecSys' disclosure of Confidential Information—but only with respect to *some* of the vendors in question. *See* Pls.' Reply (Doc. No. 314) at 7 ("CMI did not object to SpecSys sending drawings to companies that already had non-disclosure agreements in place with CMI as part of their ongoing business").

On the current record, the Court is unable to grant summary judgment to either party on Plaintiffs' claim that SpecSys breached the Confidentiality Agreement and NDA by disclosing Confidential Information to vendors. Specifically, there exist genuine disputes of material fact as to: (1) whether the vendors qualify as "Representatives" under the NDA; and (2) whether and to what extent SpecSys' disclosures were authorized by CMI.

B.   Claiming Ownership to Confidential Information

Plaintiffs allege that SpecSys "claim[ed] ownership" of CMI's Confidential Information by "'cover[ing] up' CMI Ltd.'s name and confidentiality stamp" on

---

[14] In one such email, a CMI employee told a vendor that SpecSys was CMI's "sister Company," and, in another, a CMI engineer instructed a vendor to "treat [SpecSys] as CMI." Doc. Nos. 281-12, 281-13.

Engineering Documents sent to third-party vendors.  Am. Compl. ¶ 155; Pls.' Br. (Doc. No. 232) at 7-8.  SpecSys responds that, when transmitting sensitive documents to third parties, it routinely "obscur[es] the owner's name in a title block . . . to make it more difficult for unauthorized use of the document."  Def.'s Resp. Br. (Doc. No.  281) at 12.  SpecSys contends that this practice complied with its obligation in Paragraph 3 of the NDA, which required SpecSys to "use reasonable means, not less than those used to protect its own proprietary information, to safeguard [CMI's] [Confidential] Information."  *Id.* at 16 (citing Doc. No. 78-9).

Plaintiffs fail to identify any provision in the Confidentiality Agreement or NDA that would prohibit SpecSys from redacting CMI Ltd.'s name and logo.  Nor do Plaintiffs offer argument or evidence in response to SpecSys' contention that this practice complies with Paragraph 3 of the NDA.  Consequently, SpecSys is entitled to summary judgment on this aspect of Plaintiffs contract claim.  *See Porter v. Farmers Ins. Co.*, 505 F. App'x 787, 791 (10th Cir. 2012) (affirming award of summary judgment to defendant on plaintiff's breach-of-contract claim where plaintiff failed to point to any contract provision allegedly violated by defendant's conduct); *Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859, 2007 WL 2815246, at *10 (N.D. Okla. Sept. 24, 2007) (granting summary judgment to defendant on plaintiff's breach-of-contract claim on the ground that plaintiff failed to identify "any specific contractual provision that [defendant] violated); *Phillips Univ. Legacy Found., Inc. v. Charles H Bentz Assocs., Inc.*, No. CIV-09-408-R, 2012 WL 12861099, at *2 (W.D. Okla. Mar. 1, 2012) (declining to grant summary judgment to plaintiff on its breach-of-contract claim because plaintiff "[did] not

22

point to any specific provision in the contract the [d]efendants breached").

    C.    <u>Refusal to Return Engineering Documents</u>

It is undisputed that SpecSys remains in possession of Engineering Documents containing CMI's Confidential Information.  Am. Compl. ¶¶ 80, 82; Answer ¶¶ 80, 82; Def.'s Br. (Doc. No. 243) at 12, 17; Pls.' Br. (Doc. No. 232) at 5.  Plaintiffs contend that SpecSys breached Paragraph 9 of the NDA by failing to return the Engineering Documents upon termination of the parties' relationship.  Pls.' Br. (Doc. No. 232) at 7-8.  Paragraph 9 of the NDA requires SpecSys to "promptly deliver" to CMI "all tangible copies" of documents containing Confidential Information "[u]pon expiration or earlier termination of this Agreement."  Doc. No. 78-9 at 4.

SpecSys offers no viable justification for its failure to return the Engineering Documents to CMI as required by Paragraph 9 of the NDA.  SpecSys' sole argument in this regard is that CMI cannot establish damages for the alleged breach because, having "admit[tedly] . . . retained copies" of the Engineering Documents, CMI has not been "deprived of" their use.  Def.' Resp. Br. (Doc. No. 281) at 18.  But even assuming, as SpecSys asserts, that Plaintiffs have suffered no "appreciable detriment" resulting from the breach, they are, at a minimum, entitled to recover nominal damages for acts and omissions of SpecSys that violate the NDA.  *See* Okla. Stat. tit. 23, § 98 (stating that a plaintiff who prevails on a contract claim is entitled to recover nominal damages even if he suffered "no appreciable detriment" resulting from the breach).  Thus, failure to prove actual damages is not an appropriate ground on which to grant summary judgment.  *See Miller v. Hosp. Care Consultants, Inc.*, No. CIV-10-471, 2011 WL 5025141, at *3 (E.D.

Okla. Oct. 21, 2011) (rejecting defendants' argument that summary judgment on plaintiff's contract claim should be awarded in their favor due to lack of evidence that plaintiff suffered actual damages).

Accordingly, Plaintiffs are entitled to summary judgment on their claim that SpecSys breached Paragraph 9 of the NDA by refusing to return the Engineering Documents.

> D.     Refusal to Deliver Intellectual Property

It is undisputed that SpecSys is withholding certain Intellectual Property it created using CMI's Confidential Information.  Am. Compl. ¶¶ 41, 56, 62, 80; Answer ¶¶ 41, 56, 62, 80; Pls.' Br. (Doc. No. 232) at 5.  Plaintiffs assert that CMI has made partial payments under the purchase orders, but SpecSys has not delivered any work product to CMI.  Am. Compl. ¶¶ 54, 55, 56, 63.  Plaintiffs further suggest that CMI is entitled to recover whatever Intellectual Property remains in SpecSys' possession pursuant to Paragraph 3 of the NDA, which states that CMI will be the owner of "any invention, modification, discovery, design, development, process or intellectual property right . . . result[ing] from exposure" to CMI's Confidential Information.  Pls.' Br. (Doc. No. 232) at 7 (citing Doc. No. 78-9 at 4).  SpecSys argues that CMI has not paid for the work it performed under the relevant purchase orders, and, thus, SpecSys is entitled to retain the Intellectual Property pending payment.  Am. Countercl. (Doc. No. 23) ¶¶ 5-10; Def.'s Br. (Doc. No. 241) at 17-19.

Neither party supplies any argument or evidence addressing the core issue at play—namely, whether and to what extent the purchase orders and NDA allow CMI to

recover Intellectual Property for which it has only partially paid.  This issue presents a question of contract construction, which, in the absence of meaningful advocacy, the Court declines to resolve on summary judgment.  *See Voda*, 899 F. Supp. 2d at 1199 n.20; *Beckham Cnty. Rural Water Dist. No. 3*, 2014 WL 12818160 at *13.

For the reasons stated, the Court determines that neither party is entitled to summary judgment on Plaintiffs' claim that SpecSys breached the NDA by refusing to deliver to CMI the Intellectual Property it created using CMI's Confidential Information.

MISAPPROPRIATION OF TRADE SECRETS

The parties each seek summary judgment on Plaintiffs' claims for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq. ("DTSA") and Oklahoma's Uniform Trade Secrets Act, Okla. Stat. tit. 78, § 85 et seq. ("OUTSA").  *See* Def.'s Mot. (Doc. No. 244); Pls.' Mot. (Doc. No. 231).  Plaintiffs allege SpecSys violated these statutes by "retaining" Engineering Documents, which, Plaintiffs assert, contain legally cognizable trade secrets.[15]  Am. Compl. ¶¶ 173, 179, 180; *see also* Pls.' Br. (Doc. No. 232) at 11.

SpecSys argues, and the Court agrees, that SpecSys' retention of Engineering Documents does not, without more, amount to a violation of the DTSA or the OUTSA.[16]  Def.'s Br. (Doc. No. 245) at 22-23.  Each of these statutes requires proof of

---

[15] The Court need not determine, for purposes of this order, whether the Confidential Information contained in the Engineering Documents constitutes a "trade secret" under the DTSA and OUTSA.

[16] Finding this argument to be dispositive, the Court does not reach the alternative grounds advanced by SpecSys.

"misappropriation," which is defined as: (1) acquisition by "improper means"; (2) use without consent; or (3) disclosure without consent.  18 U.S.C. § 1839(5); Okla. Stat. tit. 78, § 86(2).

It is undisputed that CMI willingly furnished SpecSys with the Engineering Documents in question.  Pls.' Br. (Doc. No. 232) at 3; Def.'s Resp. Br. (Doc. No. 281) at 9-10.  SpecSys' retention of these Engineering Documents—irrespective of CMI's subsequent withdrawal of permission—does not make the acquisition unlawful.  *See* Restatement (Third) of Unfair Competition § 40 cmt. b (1995) (explaining that, where trade secrets "ha[ve] been acquired . . . through a confidential disclosure from the trade secret owner . . . acquisition of the secret is not improper; only a subsequent use or disclosure in breach of the defendant's duty of confidence is wrongful").

Likewise, SpecSys' retention of the Engineering Documents does not support a finding of unlawful use.  Plaintiffs have offered no evidence or argument suggesting that SpecSys actually *used* the Engineering Documents for its own benefit or the benefit of a third party, and mere possession is not sufficient to show misappropriation where, as here, the documents were lawfully acquired.  *See, e.g., JustMed, Inc. v. Byce*, 600 F.3d 1118, 1131 (9th Cir. 2010) (holding that defendant's mere "possession" of trade secret against the will of its owner did not constitute "use" of the trade secret under the Uniform Trade Secrets Act); *Iofina, Inc. v. Khalev*, No. CIV-14-1328-M, 2016 WL 5794793, at *4 (W.D. Okla. Oct. 4, 2016) (granting summary judgment on OUTSA claim on the ground that plaintiff "failed to submit any evidence of defendants' use of [the] alleged trade secret, let alone use of the alleged trade secret to [plaintiff's] detriment").

26

Finally, although there exists a material fact dispute as to whether SpecSys disclosed certain Engineering Documents to vendors without CMI's consent, *see discussion supra*, Plaintiffs' misappropriation claims are predicated solely on SpecSys' *retention* of the Engineering Documents.[17]  Am. Compl. ¶¶ 173, 179, 180; *see also* Pls.' Br. (Doc. No. 232) at 11.

Because Plaintiffs have offered no argument or evidence indicative of "misappropriation," SpecSys is entitled to summary judgment on Plaintiffs' claims for violation of the DTSA and OUTSA.

## INJUNCTIVE RELIEF

In their Amended Complaint, Plaintiffs assert a claim for injunctive relief in the form of an order directing SpecSys to return to CMI: (1) the Purchased Items that CMI supplied to SpecSys under PO 17580; (2) the Engineering Documents containing CMI's Confidential Information; and (3) the Intellectual Property that SpecSys developed using CMI's Confidential Information.  *See* Am. Compl. ¶¶ 192-93.  SpecSys moves for summary judgment on Plaintiffs' claim for injunctive relief.  *See* Def.'s Mot. (Doc. No. 240).

---

[17] In the pertinent briefing, SpecSys raises the question of whether its disclosure of documents to vendors constituted a violation of the DTSA or the OUTSA.  Def.'s Resp. Br. (Doc. No. 281) at 20.  In reply, Plaintiffs contend that the disclosure was unauthorized.  Pls.' Reply Br. (Doc. No. 314) at 9.  The Court declines to address Plaintiffs' unlawful-disclosure theory, as it was not advanced by Plaintiffs in the Amended Complaint.  *See Woods v. Grant & Weber, Inc.*, No. CIV-18-939-R, 2018 WL 6517455, at *2 (W.D. Okla. Dec. 11, 2018) (explaining that "[m]otions for summary judgment should be decided on the claims as pled, not as alleged in motion papers") (citation and internal quotation marks omitted).

To obtain injunctive relief, Plaintiffs must establish: (1) success on the merits of an underlying claim; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007); *see Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009).[18] Plaintiffs concede that the injunction they seek would require SpecSys "to take affirmative action" and, thus, Plaintiffs must make a "heightened showing" on each of the four injunction factors. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (internal quotation marks omitted); *see* Pls.' Resp. Br. (Doc. No. 289) at 7.

SpecSys urges the Court to grant summary judgment in its favor for two reasons. SpecSys first challenges Plaintiffs' ability to succeed on the merits of their underlying claims, arguing that SpecSys has a right to retain the items in question pending payment of outstanding invoices by CMI. Def.'s Mot. (Doc. No. 241) at 12-21. But, as detailed elsewhere in this order, there are questions of material fact bearing on SpecSys' claimed lien rights, including whether and to what extent SpecSys performed work on CMI's behalf that remains unpaid, and whether and to what extent CMI must reimburse SpecSys

---

[18] Because Plaintiffs have not moved for a preliminary injunction, the Court limits its consideration to whether a permanent injunction may be issued as part of the judgment in this case. "The only measurable difference" between the standard required for entry of a preliminary injunction and that for permanent injunctive relief "is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits." *Prairie Band Potawatomi Nation*, 476 F.3d at 822.

for materials it purchased on CMI's behalf.  The Court likewise found there are material issues of fact precluding summary judgment on Plaintiffs' claim that SpecSys breached Paragraph 9 of the NDA by refusing to deliver the Intellectual Property it created using CMI's Confidential Information.  Finally, the Court concluded that summary judgment should be awarded in Plaintiffs' favor on their claim that SpecSys breached the NDA by refusing to return the Engineering Documents.  Thus, SpecSys cannot show the absence of a material fact with respect to the "success" prong of Plaintiffs' injunction claims.

SpecSys' second argument is that Plaintiffs' alleged injuries can be addressed through an award of monetary damages, and, therefore, irreparable harm is lacking as a matter of law.  *See* Def.'s Br. (Doc. No. 241) at 21.  To establish irreparable harm, Plaintiffs must demonstrate a "significant risk that [they] will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (internal quotation marks omitted) (emphasis removed).  The Court agrees with SpecSys that the undisputed facts establish a lack of irreparable harm insofar as Plaintiffs seek return of the Purchased Items but disagrees that the same is true insofar as Plaintiffs seek return of the Engineering Documents or the Intellectual Property.

As to the Purchased Items, Plaintiffs have presented no argument or evidence suggesting that an award of monetary damages will not compensate them for their alleged injury.  In fact, Plaintiffs suggest just the opposite:

> SpecSys spends much effort trying to show why it would be unfair or impractical to return the materials CMI provided for the TR-4s . . . . SpecSys fails to present any evidence or legal authority to support its assertion that

Plaintiffs' conversion claim requires return of the materials; it does not. As provided under Oklahoma law, *Plaintiffs seek to recover a jury award of damages in the amount of at least what it cost CMI to buy and ship materials to SpecSys, with the ultimate award to be proved at trial*.

Pls.' Reply Br. (Doc. No. 309) at 4 (emphasis added). Thus, insofar as Plaintiffs seek an injunction mandating the return of the Purchased Items, SpecSys is entitled to summary judgment.

As to the Engineering Documents, the Court has found that Plaintiffs are entitled to immediate return of those items. The Court further finds that SpecSys' failure to return the Engineering Documents threatens an irreparable harm not reducible to monetary damages. A competitor's access to a plaintiff's proprietary information poses a significant risk of harm that is difficult, if not impossible, to quantify. *See* Restatement (Third) of Unfair Competition § 44 cmt. b (1995) ("[T]he harm caused by the appropriation of a trade secret may not be fully reparable through an award of monetary relief due to the difficulty of proving the amount of loss and the causal connection with the defendant's misconduct."). A threat of imminent irreparable harm exists where the defendant "is in possession of [the plaintiff's] confidential information and is poised to use or disclose [it], either personally or through an agent such as a parent or close associate." *Jackson Hewitt, Inc. v. Barnes*, No. 10-cv-05108 (DMC) (JAD), 2011 WL 181431, at *4 (D.N.J. Jan. 18, 2011); *see also Inflight Newspapers, Inc. v. Mags. In-Flight, LLC*, 990 F. Supp. 119, 125 (E.D.N.Y. 1997) (holding that "the use and disclosure of [plaintiff's] confidential information . . . [was] likely" to happen where defendant had access to the information and was a direct competitor of plaintiff); *Caring Senior Serv.*

*Franchise P'ship L.P. v. Batson*, No. 1:06-CV-82, 2006 WL 8442197, at *5 (E.D. Tenn. May 15, 2006) (holding that "[i]rreparable harm may be established by evidence that disclosure of confidential information could enable competitors to mimic the marketing plans and strategies of the [plaintiff] and avoid the less successful strategies, resulting in a substantial competitive injury") (internal quotation marks omitted); *Hahn v. OnBoard, LLC*, No. 09-3639 (MAS), 2011 WL 703836, at *9 (D.N.J. Feb. 18, 2011) (holding that injuries occasioned by defendant's retention of plaintiff's confidential materials "may be difficult to quantify," and may not, therefore, be adequately compensated for by an award of damages).  Indeed, SpecSys agreed in advance of the parties' transactions that its disclosure of CMI's Confidential Information would cause "irreparable injury" to CMI:

> [SpecSys] and its Representatives recognize that its disclosure of [Confidential] Information will give rise to irreparable injury to CMI [], inadequately compensable in damages and that, accordingly, CMI Roadbuilding may seek and obtain injunctive relief against the breach of the within undertakings, in addition to any other legal remedies which may be available.

Doc. No. 78-9 at 4.  While not determinative of the inquiry, this stipulation provides additional support for the conclusion that SpecSys' failure to return the Engineering Documents, and the Confidential Information included therein, threatens imminent irreparable harm.  *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004).

Similar considerations are present regarding the potential use or disclosure of the Intellectual Property, i.e., the engineering documents, software code, and other intellectual property *created by SpecSys* using CMI's Confidential Information.  While

the Court rejects Plaintiffs' ability to obtain an injunction mandating the return of the Intellectual Property—as set forth above, Plaintiffs have never possessed that property in the first place—it remains possible under the rulings of the Court that Plaintiffs may establish at trial their right to sole possession of this property.  If Plaintiffs prevail on such a claim, the authorities cited above suggest that any continued possession of the Intellectual Property by SpecSys would at that time represent an irreparable harm not reducible to monetary damages.  On the present record, the Court denies SpecSys' request for summary judgment as to this aspect of Plaintiffs' injunction claim.

PLAINTIFFS' RULE 56(G) REQUEST

Rule 56(g) of the Federal Rules of Civil Procedure states that "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute."  Fed. R. Civ. P. 56(g).  Invoking this rule, Plaintiffs broadly request an order "identifying each material fact relevant to" their claims "that is not genuinely in dispute."  Pls.' Br. (Doc. No. 222) at 7; Pls.' Br. (Doc. No. 232) at 8, 11, 13, 15.  The Court declines to do so in the exercise of its discretion, as there remain significant factual disputes pertaining to the claims.  *See* Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment ("Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established."); 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2737 (4th ed.) ("The question whether to exercise [the] authority [to establish undisputed facts under Rule 56(g)] is within the court's discretion.").

CONCLUSION

For the reasons stated above, the Court rules as follows:

1.    Defendant's Motion for Partial Summary Judgment No. 4 (Doc. No. 242) is GRANTED IN PART:

> a.  The Motion is GRANTED with respect to Plaintiffs' claims for accounting and conversion of the engineering documents and Plaintiffs' claim that SpecSys breached the NDA by covering up CMI Ltd.'s name and logo on Engineering Documents sent to third-party vendors.  The parties are ADVISED that entry of judgment with respect to these claims will await resolution of Plaintiffs' remaining claims.
>
> b.  The Motion is DENIED in all other respects.

2.    Plaintiffs' Motion for Partial Summary Judgment on Count XVI (Doc. No. 221) is DENIED.

3.    Defendant's Motion for Partial Summary Judgment No. 5 (Doc. No. 244) is GRANTED IN PART:

> a.  The Motion is GRANTED with respect to Plaintiffs' claim for violation of the Defend Trade Secrets Act and Uniform Trade Secrets Act.  The parties are ADVISED that entry of judgment with respect to these claims will await resolution of Plaintiffs' remaining claims.
>
> b.  The Motion is DENIED in all other respects.

4.    Plaintiffs' Motion for Partial Summary Judgment on Counts XI, XIV, and XV (Doc. No. 231) is GRANTED IN PART:

    a.  The Motion is GRANTED with respect to Plaintiffs' claim that SpecSys breached Paragraph 9 of the NDA by refusing to return the Engineering Documents.

    b.  The Motion is DENIED in all other respects.

5.    Defendant's Motion for Partial Summary Judgment No. 3 (Doc. No. 240) is GRANTED IN PART:

    a.  The Motion is GRANTED insofar as Plaintiffs seek an injunction mandating the return of the Purchased Items.  The parties are ADVISED that entry of judgment with respect to these claims will await resolution of Plaintiffs' remaining claims.

    b.  The Motion is DENIED in all other respects.

IT IS SO ORDERED this 28th day of May, 2021.


_____
CHARLES B. GOODWIN
United States District Judge