UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CMI ROADBUILDING, INC., and ) | |
| CMI ROADBUILDING, LTD. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. CIV-18-1245-G |
| ) | |
| SPECSYS, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is Plaintiffs' Motion for Partial Summary Judgment on Count VII and Defendant's Counterclaims Regarding PO 21234 (Doc. No. 227) and supporting brief (Doc. No. 228). Defendant has responded in opposition (Doc. No. 279) and Plaintiffs have replied (Doc. No. 316). The Court makes its decision based on the parties' written submissions.

### BACKGROUND

This lawsuit stems from a series of purchase orders whereby Defendant SpecSys, Inc. ("SpecSys") agreed to manufacture mobile equipment and provide related design and engineering services to Plaintiff CMI Roadbuilding, Inc. ("CMI"). The business relationship soured, resulting in claims and counterclaims, including, as relevant to the Motion under review, Plaintiffs' claim for breach of Purchase Order 21234 ("PO 21234"). *See* Am. Compl. (Doc. No. 78) ¶¶ 124-29.

PO 21234 embodies an agreement for the manufacture and delivery of various

wiring harnesses integral to the assembly of CMI's TM-11 machine.[1]  Doc. No. 78-36, at 3-9.  Although PO 21234 was issued to SpecSys, and almost all relevant dealings were handled through SpecSys, the parties had an understanding at the outset of the transaction that the harnesses would be manufactured by SpecSys' "sister company," RVI, Inc. ("RVI").  Pls.' Br. (Doc. No. 228) at 3; Def.'s Resp. Br. (Doc. No. 279) at 9.

PO 21234 called for six separate deliveries of eleven harnesses each on the following dates: August 15, 2018; August 27, 2018; November 19, 2018; December 10, 2018; January 7, 2019; and January 28, 2019.  Doc. No. 78-36, at 3-5.  The original delivery schedule was subsequently modified by agreement of the parties "to require the first delivery on October 22, 2018 and the second delivery on November 2, 2018."[2]  Pls.' Br. at 8; *see also* Def.'s Resp. Br. at 10; Doc. No. 279-10, at 1-4 (the "Change Order").[3]

PO 21234 includes the annotation "Terms: Net 30 Days," Doc. No. 78-36, at 3,

---

[1] The T-11 machine is a "self-propelled landfill compactor."  Pls.' Br. at 2.

[2] SpecSys blames CMI for the problems necessitating modification of the original delivery schedule.  *See* Def.'s Resp. Br. at 14-15 (citing "numerous errors" in CMI's harness designs, which "forced [SpecSys] to spend hours identifying these errors and interpreting incomplete designs"); *id.* at 15 (complaining that CMI "modified the scope of work to add . . . additional harnesses").  But SpecSys does not explain—and the Court is unable to independently discern—the relevance of this point.  Plaintiffs have sued SpecSys for failing to deliver the harnesses in accordance with the *modified* delivery schedule, and SpecSys has not identified any act or omission by CMI that prevented SpecSys from complying with the dates listed therein.

[3] Plaintiffs take a contrary position in their reply brief, asserting that "although a proposed revised PO 21234 was discussed, there is no evidence one was issued."  Pls.' Reply Br. (Doc. No. 316) at 3.  Not only does this statement conflict with the position taken in Plaintiffs' opening brief, it is belied by the record evidence, which includes a document titled "Change Order" memorializing the modified delivery schedule and referencing PO 21234.  *See* Pls.' Br. at 8; Doc. No 279-10 at 1-4.

which the parties agree meant that "CMI would pay invoices thirty days after receipt." Pls.' Br. at 4; Def.'s Resp. Br. at 9. The same annotation is included in the Change Order documenting the modification to the delivery schedule. Doc. No 279-10 at 1. PO 21234 provides that "acceptance of this [purchase order] is limited to acceptance of the express terms" therein, and that "[a]ny modification to the terms . . . must be in writing signed by the party to be charged." Doc. No. 78-36, at 8-9.

By September 19, 2018, the parties' relationship had deteriorated to the point that CMI directed SpecSys, via email, to stop work on "all" active purchase orders. Am. Compl. ¶ 79; Answer ¶ 79; Doc. No. 78-51 at 1. A reply email was sent the next day by Kevin Wald ("Wald"), Chief Executive Officer for both SpecSys and RVI. The email stated, in relevant part:

> I assume you do not want RVI, sister company to SpecSys, to abruptly stop on harnesses being developed for the TM-11. As RVI incurred four fold the hours in up front setup on this effort, CMI would certainly impact production of the [TM-11] units . . . and end up with a full P.O. bill. Please clarify here of CMI desires.

Doc. No. 78-52 at 2.

Les Bebchick ("Bebchick") of CMI replied to Wald on September 23, 2018. The email stated, in pertinent part:

> "Our instructions stand; STOP ALL WORK AND BILLINGS EFFECTIVE AT THE CLOSE OF BUSINESS, WEDNESDSAY, SEPTEMBER 19, 2018 . . . . Regarding our order to RVI, this termination only applies to SpecSys and we fully expect to continue to receive a finished product in a timely manner from RVI as noted in our P.O."

*Id.* at 1.

On October 12, 2018, RVI notified CMI that it could have the first set of harnesses

3

ready to ship by October 19, 2018, the second set of harnesses ready to ship by October 26, 2018, and the remaining harnesses ready to ship per the original delivery schedule. Doc. No. 228-14 at 5-6. RVI further advised that, pursuant to a directive from Wald, "all deliveries [were] to be processed *cash in advance* upon release." *Id.* at 5 (emphasis added).

On October 17, 2018, RVI emailed CMI two invoices (Invoice Nos. 051894 and 051895) corresponding to the first two sets of harnesses under PO 21234. Doc. No. 228-13, at 1, 5, 6. Each invoice bears an annotation indicating that it is due on receipt.[4] *Id.* at 5, 6.

On October 26, 2018, Wald sent an email to CMI's Glenn Dalby ("Dalby") advising that SpecSys was initiating "debt collection efforts" against CMI "to the fullest amount allowed by law." Doc. No. 228-15 at 2-3. The email stated, in relevant part: "I understand you are desiring shipment of wire harnesses for the TM-11 units. These harnesses will not be shipped from my companies until such time that *all accounts past due are brought current*, or a payment work out agreement is signed by both parties." Doc. No. 78-53 at 1 (emphasis added). Just minutes later, Wald sent the following email to RVI personnel:

> RVI,
> Do not ship CMI Wire Harnesses until informed to do so by me. If CMI sent or wired funds for harnesses, we will return those harness funds via mailed

---

[4] Even though the agreement was between CMI and SpecSys, CMI agreed to accept and pay an invoice from RVI. Doc. No. 228-13 at 1; *see also* Pls.' Br. at 5 ("CMI was ready and willing to pay for the first two sets of harnesses regardless of whether RVI or SpecSys issued the invoice").

4

>check, with signed receipt of delivery (this time only).
>Dave [Gelhar] had promised not to hold their funds hostage, and we will honor that verbal offer. All future funds after this, provided from CMI, are not to be returned, and cashed immediately.

Doc. No. 228-15 at 1.

It is undisputed that neither SpecSys nor RVI delivered any harnesses to CMI under PO 21234 or otherwise. *See* Pls.' Br. at 5-6; Def.'s Resp. Br. at 11-12. It is further undisputed that CMI did not make any payments corresponding to PO 21234.

The instant lawsuit was filed on December 20, 2018, by CMI and its parent company CMI Roadbuilding, Ltd.[5] (collectively, "Plaintiffs"). Plaintiffs allege, among other things, that SpecSys "fail[ed] to perform its obligations as set forth in PO 21234" by: (1) failing to tender delivery of the wiring harnesses; and (2) demanding payment in full prior to shipment. Am. Compl. ¶¶ 127-28.

SpecSys filed a counterclaim to recover sums it claims are due and owing under various unpaid invoices, including, as relevant here, Invoice No. 051895 for work allegedly performed under PO 21234. *See* Am. Countercl. (Doc. No. 23) ¶ 8. SpecSys relies primarily on a breach-of-contract theory but advances an alternative claim for quantum meruit "in the event that any work performed by SpecSys for the service and benefit of CMI is not authorized or encompassed in the terms of the written Purchase Orders." *Id.* ¶ 12.

---

[5] CMI Roadbuilding, Ltd. is the alleged owner of certain information that is the subject of a number of Plaintiffs' claims. Am. Compl. ¶ 9.

## SUMMARY JUDGMENT STANDARD

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences

6

drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

## ANALYSIS

Plaintiffs seek summary judgment on their claim for breach of PO 21234,[6] as well as SpecSys' counterclaims for breach of contract and quantum meruit.

I. *Whether Plaintiffs are Entitled to Summary Judgment on Their Claim for Breach of PO 21234*

Under Oklahoma law,[7] the elements of a claim for breach of contract include: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digit. Design Grp., Inc. v. Info. Builders, Inc.,* 24 P.3d 834, 843 (Okla. 2001). As detailed below, the Court concludes that Plaintiffs are entitled to summary judgment on their claim that SpecSys breached PO 21234.

A. Formation of Contract

The undisputed evidence in this case reflects that CMI and SpecSys formed a contract for the manufacture and delivery of wiring harnesses, the terms of which are set

---

[6] Plaintiffs alternatively request an order "pursuant to Fed. R. Civ. P. 56(g) identifying each material fact relevant to CMI's breach of contract claim on PO 21234 that is not genuinely in dispute." Pl.'s Br. at 10-11. Because the Court rules in Plaintiffs' favor on this claim, Plaintiffs' request for alternative relief under Rule 56(g) is moot.

[7] PO 21234 includes a choice-of-law provision calling for the application of Oklahoma law. *See* Doc. No. 78-36 at 9.

7

forth in PO 21234, as amended by the Change Order. Doc. No. 78-36, at 3-9; Doc. No 279-10, at 1-4. Pursuant to these terms: (1) SpecSys was to deliver the first two sets of wiring harnesses to CMI on October 22, 2018, and November 2, 2018, respectively; and (2) CMI was to remit payment to SpecSys[8] within 30 days of invoice receipt. *Id.*; *see also* Pls.' Br. at 4; Def.'s Resp. Br. at 9.

B.  Breach of Contract

Plaintiffs argue that SpecSys breached PO 21234 in two ways: (1) by failing to tender delivery of the first two sets of wiring harnesses on or before the agreed-upon dates; and (2) by demanding payment in full prior to shipment. Am. Compl. ¶¶ 127-28.

1. Failure to Tender Delivery of Wiring Harnesses

It is undisputed that SpecSys did not deliver any wiring harnesses to CMI in accordance with PO 21234. *See* Pls.' Br. at 5-6; Def.'s Resp. Br. at 11-12.

SpecSys asserts that PO 21234 was "cancelled" by CMI on September 19, 2018, thereby suggesting that SpecSys was relieved of its obligation to deliver the harnesses as promised. Def.'s Resp. Br. at 10; *see also id.* at 11 (noting that CMI "ordered a stoppage of work" prior to the issuance of Invoice Nos. 051894 and 051895 and prior to Wald's demands for full payment on PO 21234). The notion that PO 21234 was called off on or before the October 22, 2018 delivery date is belied by the email communications detailed above, which indisputably reflect an understanding between the parties that PO 21234 was

---

[8] Plaintiffs state that CMI was "willing to pay for the first two sets of harnesses regardless of whether RVI or SpecSys issued the invoice," and by agreement of the parties, it was RVI—not SpecSys—that issued the invoices. Pls.' Br. at 5.

8

to remain in force despite CMI's termination[9] of other purchase orders.[10]  SpecSys offers nothing to refute this evidence.

The Court thus concludes that the undisputed evidence establishes SpecSys breached PO 21234 by failing to tender delivery of the first two sets of harnesses on or before the agreed-upon dates.

 2. Demand for Payment in Full Prior to Shipment

It is undisputed that PO 21234 required CMI to pay invoices issued thereunder within 30 days of receipt.  *See* Doc. No. 78-36, at 3; Doc. No. 279-10, at 1; Pls.' Br. at 4; Def.'s Resp. Br. at 9.  It is further undisputed that the first two invoices issued under PO 21234 (Invoice Nos. 051894 and 051895) were received by CMI on October 17, 2018. *See* Doc. No. 228-13.  Pursuant to the undisputed payment terms of PO 21234, CMI's first payments were not due until November 16, 2018, at the earliest.

Prior to that date, however, SpecSys demanded that CMI remit payment in full

---

[9] Nothing stated herein is to be construed as a determination that the purchase orders were "terminated" or "cancelled" within the meaning of Okla. Stat. tit. 12A, § 2-106.  That issue is not presently before the Court.

[10] *See, e.g.*, Doc. No. 78-52, at 2 (Sept. 20, 2018 email from Wald to Bebchick requesting "clarif[ication] . . . of CMI desires" with respect to "harnesses being developed for the TM-11"); *id.* at 1 (Sept. 23, 2018 email from Bebchick to Wald explaining "this termination only applies to SpecSys and [CMI] fully expect[s] to continue to receive a finished product in a timely manner from RVI as noted in [PO 21234]"); Doc. No. 228-14, at 5-6 (Oct. 12, 2018 email from RVI to CMI notifying CMI that the first set of harnesses could be ready to ship by October 19, 2018); Doc. No. 228-13, at 1, 5, 6 (Oct. 17, 2018 email from RVI to CMI transmitting Invoice Nos. 051894 and 051895 for the first two sets of harnesses under PO 21234); Doc. No. 228-15, at 2-3 (Oct. 26, 2018 email from Wald to CMI acknowledging CMI's "desir[e] [for] shipment of wire harnesses for the TM-11 units"); *id.* at 1 (Oct. 26, 2018 email from Wald to RVI personnel directing that no harnesses be shipped to CMI "until informed by [Wald] to do so").

before SpecSys would release any harnesses for delivery. *See* Doc. No. 228-14, at 5 (Oct. 12, 2018 email from RVI advising that, pursuant to a directive from Wald, "all deliveries [were] to be processed cash in advance upon release"); Doc. No. 228-13, at 5, 6 (invoices indicating payment due on receipt). On one occasion, SpecSys declared that it would not ship any harnesses until CMI remitted payment on *all* outstanding invoices, including invoices corresponding to transactions unrelated to the manufacture and delivery of harnesses under PO 21234. *See* Doc. No. 228-15, at 1-2 (Oct. 26, 2018 email from Wald to Dalby advising that the harnesses would "not be shipped . . . until such time that all accounts past due are brought current").

SpecSys offers no argument or evidence justifying such demands. In accordance with PO 21234, a modification of payment terms would have required a "writing signed by the party to be charged"—here, CMI. Doc. No. 78-36, at 8-9. SpecSys has pointed to no such writing. Thus, the undisputed evidence demonstrates that SpecSys declared its intention not to deliver the harnesses unless and until CMI complied with its unilateral and unauthorized demand for payment of invoices that: (1) were not yet due under PO 21234[11]; and/or (2) were entirely unrelated to PO 21234.[12] In the absence of evidence to the contrary, the Court concludes that SpecSys' statements amount to a repudiation of PO

---

[11] *See* Doc. No. 228-14, at 5 (Oct. 12, 2018 email from RVI advising that, pursuant to a directive from Wald, "all deliveries [were] to be processed cash in advance upon release"); Doc. No. 228-13 (invoices indicating payment due on receipt).

[12] *See* Doc. No. 228-15 at 2-3 (Oct. 26, 2018 email from Wald to Dalby advising that the harnesses would "not be shipped . . . until such time that all accounts past due are brought current, or a payment work out agreement is signed by both parties").

21234.  *See* Okla. Stat. tit. 12A, § 2-610 cmt. 2 ("[W]hen under a fair reading [a party's] demand] amounts to a statement of intention not to perform except on conditions which go beyond the contract, it becomes a repudiation").  A "repudiation constitutes a breach" of the contract at issue.  *Chisholm Trail Dev., LLC v. Arvest Bank*, No. CIV-15-0633-HE, 2016 WL 6892789, at *2 (W.D. Okla. Nov. 21, 2016); *see also* Restatement (Second) of Contracts § 243(2) (1981) ("breach by non-performance accompanied or followed by a repudiation gives rise to a claim for damages for total breach"); *id.* § 253(1) ("Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach.").

Accordingly, the undisputed evidence reflects that SpecSys breached PO 21234 by demanding payment of invoices prior to its shipment of harnesses.

C.  Damages

The final element of a contract claim is damages.  SpecSys argues that CMI "has not paid a dime" under PO 21234 and has not identified any evidence from which a reasonable jury could conclude that it suffered damages as a result of the alleged breach.[13]  Def.'s Resp. Br. at 16.  The Court finds this argument unpersuasive.  Under Oklahoma law, a party may recover nominal damages for the breach of a contractual duty that caused the party "no appreciable detriment."  Okla. Stat. tit. 23, § 98.  Thus, failure to prove actual

---

[13] Plaintiffs seek summary judgment "on SpecSys' liability for breaching PO 21234, with damages to be proved at trial."  Pls.' Br. at 2, 10, 13.

damages is not an appropriate ground on which to grant summary judgment. *See Miller v. Hosp. Care Consultants, Inc.*, No. CIV-10-471, 2011 WL 5025141, at *3 (E.D. Okla. Oct. 21, 2011) (rejecting defendants' argument that summary judgment on plaintiff's contract claim should be awarded in their favor due to lack of evidence that plaintiff suffered actual damages); *Fed. Ins. Co. v. Indeck Power Equip. Co.*, No. 5:15-cv-00491-D, 2019 WL 4738274, at *5 (W.D. Okla. Sept. 27, 2019).

II.   *Whether Plaintiffs are Entitled to Summary Judgment on SpecSys' Counterclaim for Breach of Contract*

Plaintiffs next seek summary judgment on SpecSys' claim that CMI breached PO 21234 by failing to pay Invoice No. 051895. Pls.' Br. at 11. Plaintiffs argue that SpecSys cannot prevail on this claim because it "did not deliver any harnesses to CMI." *Id.* (arguing that SpecSys' failure to deliver the harnesses relieved CMI of its obligation to "pay in accordance with the contract") (quoting Okla. Stat. tit. 12A, § 2-301). SpecSys offers no response to this argument.

In the absence of evidence or argument to the contrary, the Court concludes that CMI was, as a matter of law, justified in withholding payment under Invoice No. 0511895 based on SpecSys' failure to deliver the harnesses, coupled with SpecSys' unequivocal repudiation of PO 21234, as detailed in the previous section. *See* Okla. Stat. tit. 12A, § 2-610(c) (explaining that, in the event of a repudiation by one party, the non-repudiating party may "suspend his own performance"); Restatement (Second) of Contracts § 243(2) (1981) ("breach by non-performance accompanied or followed by a repudiation gives rise to a claim for damages for total breach"); *id.* § 253(2) ("one party's repudiation of a duty

to render performance discharges the other party's remaining duties to render performance"); *see also* PO 21234, Doc. No. 78-36, at 8 ("Payments shall be conditional upon goods or services being supplied in all respects in accordance with this PO . . . .").

Accordingly, Plaintiffs are entitled to summary judgment on SpecSys' contract claim for failure to pay Invoice No. 0511895.

### III. Whether Plaintiffs are Entitled to Summary Judgment on SpecSys' Counterclaim for Quantum Meruit

Finally, Plaintiffs seek summary judgment on SpecSys' quantum meruit claim for work allegedly performed in connection with PO 21234. Plaintiffs argue that recovery for any such work must be made through a claim for breach of contract. Pls.' Br. at 11.

To prevail on a claim of quantum meruit, SpecSys must demonstrate: (1) that it rendered valuable services to CMI with a reasonable expectation of being compensated; (2) that CMI knowingly accepted the benefit of the services; and (3) that CMI would be unfairly benefitted by the services if no compensation were provided to SpecSys. *See AT & T Corp. v. Matrix Telecom, Inc.*, No. CIV-05-118-C, 2006 WL 2246452, at *3 (W.D. Okla. Aug. 4, 2006); *Big Hunt Media, Inc. v. Smith & Wesson Corp.*, No. CIV-18-299-R, 2018 WL 3625842, at *3 (July 30, 2018).

Plaintiffs are correct that SpecSys cannot recover under a quantum meruit theory for performing work within the scope of the PO 21234. *See Brown v. Wrightsman,* 51 P.2d 761, 763 (Okla. 1935) (explaining that quantum meruit "applies only where there is no express contract"); *Shumaker v. Hazen,* 372 P.2d 873, 875 (Okla. 1962) ("There cannot be an express and an implied contract for the same thing existing at the same time.").

SpecSys may, however, recover for work it performed that goes beyond the scope of the written contract, provided that such work benefitted CMI and otherwise meets the requirements of a quantum meruit claim. *See BB & B Constr., Inc. v. Hogan*, 17 F. App'x 850, 851 (10th Cir. 2001) ("Although the doctrine of quantum meruit generally applies in the absence of an express contract, . . . [r]elief under a quantum meruit theory may be permitted as long as it involves obligations outside the scope of the express contract."); *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (holding that plaintiff could pursue recovery under a quantum meruit theory for services rendered after termination of the parties' contract); *accord Feldman v. MCZ Dev. Corp.*, No. 12-cv-431, 2013 WL 12131596, at *5 (N.D. Okla. Feb. 4, 2013); *Maroy v. Isis, LLC of Okla.*, No. CIV-06-0776-F, 2006 WL 3742166, at *2 (W.D. Okla. Dec. 15, 2006).

SpecSys contends that it performed work outside the scope of PO 21234 by "identifying errors in CMI's harness designs." Def.'s Resp. Br. at 12; *see also id.* at 17. SpecSys argues that CMI received and knowingly accepted a benefit from this extra-contractual work. *Id.* at 15 ("SpecSys was never on contract to fix CMI's [design] errors," but "the harnesses could not be manufactured until the errors and incomplete designs were addressed"). SpecSys supports its contention by reference to PO 21234, which by its terms does not obligate SpecSys to perform services of any kind, in addition to deposition testimony and email communications indicating that SpecSys and RVI employees expended time and effort to resolve flaws in CMI's harness designs. *See* Doc. Nos. 279-15, 279-16, 279-17, 279-18; Osman Dep. (Doc. No. 279-19) 66:9-18; Gilbertson Dep. (Doc. No. 279-20) 3:15-13.

14

In reply, Plaintiffs point to the absence of time records "evidencing work performed by [SpecSys] engineers." Reply Br. (Doc. No. 316) at 5. Plaintiffs further contend that SpecSys cannot recover under a quantum meruit theory for work performed by RVI. *Id.*; *see also* Pls.' Br. at 12 ("SpecSys bases its quantum meruit claim on work actually performed by RVI."). The Court is unpersuaded by these arguments. The evidence cited above reflects that SpecSys employees were involved in the identification and resolution of harness design errors. Thus, while SpecSys may not recover for similar work done by RVI, there exists a material issue of fact as to whether SpecSys rendered services to CMI that went beyond the scope of PO 21234.

Moreover, Plaintiffs offer no evidence to refute SpecSys' argument that CMI benefitted from the identification and resolution of harness design errors. At a minimum, there exists a disputed issue of fact as to whether CMI realized a benefit from these efforts.

Thus, the Court concludes that there are material issues of fact precluding summary judgment in Plaintiffs' favor on SpecSys' claim to recover, under a quantum meruit theory, for identifying and resolving errors in CMI's harness design.

SpecSys also purports to recover under a quantum meruit theory for unspecified "work and materials" on PO 21234 for which it claims to be "indebted to RVI." Def.'s Resp. Br. at 17. Plaintiffs argue, and the Court agrees, that SpecSys has submitted no evidence from which a reasonable jury could conclude that CMI benefitted from any such work or materials. Reply Br. at 5. Indeed, it is undisputed that no harnesses were delivered to CMI under PO 21234 or otherwise. *See* Pls.' Br. at 5-6; Def.'s Resp. Br. at 11-12.

Consequently, the Court concludes that Plaintiffs are entitled to summary judgment in their favor on SpecSys' quantum meruit claim insofar as Plaintiffs seek to recover for "work and materials" under PO 21234.

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment on Count VII and Defendant's Counterclaims Regarding PO 21234 (Doc. No. 227) is GRANTED IN PART:

1. The Motion is GRANTED insofar as Plaintiffs seek summary judgment on: (a) Plaintiffs' claim that Defendant breached PO 21234 by failing to deliver the first two sets of wiring harnesses and by demanding payment in full prior to shipment of the harnesses; (b) Defendant's claim that CMI breached PO 21234 by failing to pay Invoice No. 051895; and (c) Defendant's claim to recover under a quantum meruit theory for work and materials supplied under PO 21234. The parties are ADVISED that entry of judgment with respect to these claims will await resolution of Plaintiffs' remaining claims.

2. The Motion is DENIED in all other respects.

IT IS SO ORDERED this 28th day of May, 2021.

*Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge