# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CMI ROADBUILDING, INC., and<br>CMI ROADBUILDING, LTD.<br><br>     Plaintiffs,<br>v.<br><br>SPECSYS, INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)  Case No. CIV-18-1245-G<br>)<br>)<br>)<br>) |

## ORDER

Now before the Court is Defendant's Motion for Partial Summary Judgment No. 1 (Doc. No. 236) and supporting brief (Doc. No. 237). Plaintiffs have responded in opposition (Doc. No. 288) and Defendant has replied (Doc. No. 294). The Court makes its decision based on the parties' written submissions.

*I.  Background*

This lawsuit stems from a series of purchase orders whereby Defendant SpecSys, Inc. ("SpecSys") agreed to manufacture mobile equipment and provide related design and engineering services to Plaintiff CMI Roadbuilding, Inc. ("CMI"). The business relationship soured, resulting in claims and counterclaims, including, as relevant to the Motion under review, Plaintiffs' claim that SpecSys tortiously interfered with the employment contract between CMI and its former Chief Engineer Chad Harrison ("Harrison"). *See* Am. Compl. (Doc. No. 78) ¶¶ 166-170.

Plaintiffs claim that Harrison left CMI because he believed Kevin Wald ("Wald"), SpecSys' Chief Executive Officer, "had poisoned CMI's ownership against [Harrison]."

Pls.' Resp. Br. (Doc. No. 288) at 2.  Plaintiffs allege that, beginning in April 2018, Wald "aggressively attacked" the work of Harrison, among others, in an attempt to make SpecSys "the sole source of engineering" for CMI.  Am. Compl. ¶ 57.  During a conference call on May 16, 2018, Wald allegedly "insulted Harrison's ability, professionalism, and work product" and "told Harrison his days at CMI [] were numbered."  *Id.*  Plaintiffs' theory is that these disparaging remarks "put so much strain on Harrison's relationship with CMI ownership that he resigned."  Pls.' Resp. Br. at 2, 5.

Harrison submitted his resignation by email dated June 12, 2018.  The email states, in relevant part:

> Know that I wasn't actively looking for work but rather the company reached out to me for my interest.  I can say the frustrations with our staffing level, or lack of, ultimately lead to my decision to pursue other options.  There is a lot of stress in the organization right now and I hope you can find the system that works to get CMI moving forward.  Your partnering with Spec[S]ys is a good direction as they've been able to persuade you to invest in the engineering of a product where I failed.

Doc. No. 253-4, at 1.

During his deposition on August 7, 2020, Harrison affirmed that he decided to leave CMI for the reasons cited in the June 12, 2018 email—namely, "frustrations with [CMI's] staffing level"[1] and "stress in the organization"—but that "other factors" (i.e., factors not listed in the June 12, 2018 email) influenced his decision as well.  *See* Harrison Dep. 45:9-14, 58:21-59:4.

---

[1] Harrison explained that, at the time of his resignation, he was one of only two CMI engineers staffed on projects for mobile equipment.  *See* Harrison Dep. (Doc. Nos. 253-2, 288-3) 45:20-46:18.

When asked to explain the email's reference to "stress in the organization," Harrison responded that production startup at CMI's newly acquired facility in Waverly, Iowa meant that "lots of projects [were] moving," and there were "frustrations" associated with "trying to make everything work." *Id.* 46:25-47:7. Another source of intraorganizational stress, according to Harrison, was the "SpecSys interaction," which, Harrison stated, "was an issue of concern for long-term CMI." *Id.* 47:25-48:5. Harrison explained that "the scope of work was exiting CMI," that "SpecSys was taking control of the product," and that CMI was not providing sufficient oversight on projects to "[v]erify the work [was] getting done [by SpecSys] as requested." *Id.* 59:9-12, 51:8-22. Harrison also complained that SpecSys caused production delays when it determined CMI's software was "unusable" and needed to be rewritten. *Id.* 59:20-60:23.

Despite these frustrations, Harrison testified that his interactions with SpecSys personnel were courteous and professional. *Id.* 98:16-99:3, 167:11-15.

## II.   *Summary Judgment Standard*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need

not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. *Analysis*

Under Oklahoma law, a claim for tortious interference consists of three elements: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately

sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla. 2009). SpecSys argues—and the Court agrees—that Plaintiffs have not submitted sufficient evidence from which a jury could reasonably conclude that Wald's disparaging remarks about Harrison proximately caused Harrison's resignation from CMI. Def.'s Br. (Doc. No. 237) at 12-14.

The Rule 56 evidentiary material submitted by the parties reflects that Harrison resigned from CMI because he was apprehensive about the future of the company and was otherwise dissatisfied with the day-to-day conditions of his job. As detailed above, Harrison explained his decision to resign as one based on the beliefs that CMI did not employ enough engineers, that CMI was allowing SpecSys too much control over projects, and that "the scope of work was exiting CMI." Harrison Dep. 59:11-12. Harrison also expressed frustration with production delays and stress attendant to the Waverly startup and other projects.

Plaintiffs have presented no evidentiary material that would allow, even viewing all inferences in Plaintiffs' favor, a reasonable conclusion that Wald's comments caused— or even contributed to—Harrison's decision to leave CMI. Plaintiffs' "own speculation and argument" as to why Harrison resigned are legally insufficient to create a jury question on this issue. *Nat'l Motosport Ass'n, LLC v. ABC Race Ass'n, Inc.*, No. CIV-12-113-L, 2013 WL 268987, at *5 (W.D. Okla. Jan. 24, 2013) (holding that plaintiff's "own speculation and argument" that defendant "caused or convinced [another party] to terminate its existing contract with [plaintiff]" was insufficient to show causation as a matter of law).

CONCLUSION

For the reasons outlined above, the Court finds SpecSys is entitled to judgment as a matter of law on Plaintiffs' claim for tortious interference (Count XIII).

Accordingly, the Court:

1. GRANTS Defendant's Motion for Partial Summary Judgment No. 1 (Doc. No. 236); and

2. ADVISES the parties that entry of judgment in favor of Defendant under Federal Rule of Civil Procedure 58 on this claim for relief will await resolution of Plaintiffs' remaining claims.

IT IS SO ORDERED this 28th day of May, 2021.

_____
CHARLES B. GOODWIN
United States District Judge