## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CMI ROADBUILDING, INC., and | ) | |
| CMI ROADBUILDING, LTD. | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Case No. CIV-18-1245-G** |
| | ) | |
| SPECSYS, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Now before the Court is Plaintiffs' Motion for Partial Summary Judgment on Defendant's Counterclaim for Quantum Meruit (Doc. No. 234) and supporting brief (Doc. No. 235). Defendant has responded in opposition (Doc. No. 283) and Plaintiffs have replied (Doc. No. 318). The Court makes its decision based on the parties' written submissions.

### I.  *Background*

This lawsuit stems from a series of purchase orders (the "Purchase Orders") whereby Defendant SpecSys, Inc. ("SpecSys") agreed to manufacture mobile equipment and provide related design and engineering services to Plaintiff CMI Roadbuilding, Inc. ("CMI"). The Purchase Orders, which have been detailed in related Orders of the Court, are summarized below:

- Purchase Order 17580, dated January 11, 2018, whereby SpecSys agreed to manufacture and assemble TR-4 machines for CMI (Doc. No. 78-16 at 2-11);

- Purchase Order 18643, dated March 2, 2018, whereby SpecSys agreed to perform engineering updates to the concept design for CMI's TP-4 machine

(Doc. No. 78-26 at 9-12);

- Purchase Order 18644, dated March 2, 2018, whereby SpecSys agreed to create a manual for the TR-4 machine (Doc. No 78-26 at 13-15);

- Purchase Order 18645, dated March 2, 2018, whereby SpecSys agreed to provide control support services related to the TR-4 and TP-4 projects (Doc. No. 78-26 at 16-19);

- Purchase Order 20501, dated May 24, 2018, whereby SpecSys agreed to provide "engineering manpower" for the support and design of CMI mobile equipment over a three-month period (Doc. No. 78-33 at 2-5);

- Purchase Order 21234, dated July 10, 2018, whereby SpecSys agreed to manufacture various wiring harnesses for CMI (Doc. No. 78-36 at 3-9);

- Purchase Order 22015, dated August 20, 2018, whereby SpecSys agreed to develop, test, and debug software and controls on CMI's SP-5 machine and provide related engineering services (Doc. No. 78-46 at 2-5); and

- Purchase Order 22016, dated August 20, 2018, whereby SpecSys agreed to develop, test, and debug software and controls on CMI's TM-11 machine and provide related engineering services (Doc. No. 78-46 at 6-9).

Beginning on January 12, 2018, SpecSys sent CMI invoices for work it claims to have performed under the Purchase Orders.  *See* Doc. Nos. 23-3, 23-4, 23-5, 23-6, 23-7, 23-9, 23-10, 23-11, 23-12, 23-13, 23-15, 23-17, 23-19, 23-20, 23-21, 23-22, 23-24, 23-26, 23-27, 23-29, 23-30, 23-32.  CMI paid some of the invoices and refused to pay others. *See* Am. Compl. (Doc. No. 78) ¶¶ 42, 50, 66, 78; Answer (Doc. No. 82) ¶¶ 42, 50, 66, 78. The parties soon became embroiled in a dispute about: (1) what amounts, if any, are due and owing to SpecSys under the outstanding invoices; and (2) what items, if any, SpecSys is obligated to turn over to CMI.  The dispute blossomed into the current lawsuit, which was filed on December 20, 2018, by CMI and its parent company CMI Roadbuilding, Ltd.

(collectively, "Plaintiffs").

SpecSys has filed a counterclaim to recover sums it claims are due and owing under the unpaid invoices. *See* Am. Countercl. (Doc. No. 23). SpecSys relies primarily on a breach-of-contract theory but advances an alternative claim for quantum meruit "in the event that any work performed by SpecSys for the service and benefit of CMI is not authorized or encompassed in the terms of the written Purchase Orders." *Id.* ¶ 12. The viability of Plaintiffs' quantum meruit claim is the subject of the Motion under review.

## II.   *Summary Judgment Standard*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. *Analysis*

SpecSys seeks to recover under the doctrine of quantum meruit for any work it performed that is ultimately found to be unauthorized or outside the scope of the Purchase Orders. Def.'s Resp. Br. (Doc. No. 283) at 19-20. CMI contends that the doctrine is categorically inapplicable—and thus, SpecSys' quantum meruit claim fails as a matter of law—because the parties' transactions are governed exclusively by the Purchase Orders. Pls.' Br. (Doc. No. 235) at 5.

To prevail on its claim of quantum meruit, SpecSys must show: (1) that it rendered valuable services to CMI with a reasonable expectation of being compensated; (2) that

4

CMI knowingly accepted the benefit of the services; and (3) that CMI would be unfairly benefitted by the services if no compensation were provided to SpecSys.  *See AT & T Corp. v. Matrix Telecom, Inc.*, No. CIV-05-118-C, 2006 WL 2246452, at *3 (W.D. Okla. Aug. 4, 2006).

The doctrine "applies only where there is no express contract."  *Brown v. Wrightsman,* 51 P.2d 761, 763 (Okla. 1935); *see also Shumaker v. Hazen,* 372 P.2d 873, 875 (Okla. 1962) ("There cannot be an express and an implied contract for the same thing existing at the same time").  Oklahoma law recognizes, however, that despite the existence of an express contract, a plaintiff may recover for work it performed outside the scope of the parties' contract.  *See McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (holding that plaintiff could pursue recovery under a quantum meruit theory for services rendered and accepted after termination of the parties' contract); *BB & B Constr., Inc. v. Hogan*, 17 F. App'x 850, 851 (10th Cir. 2001) ("Although the doctrine of quantum meruit generally applies in the absence of an express contract, . . . [r]elief under a quantum meruit theory may be permitted as long as it involves obligations outside the scope of the express contract."); *accord Feldman v. MCZ Dev. Corp.*, No. 12-cv-431, 2013 WL 12131596, at *5 (N.D. Okla. Feb. 4, 2013); *Maroy v. Isis, LLC of Okla.*, No. CIV-06-0776-F, 2006 WL 3742166, at *2 (W.D. Okla. Dec. 15, 2006).

It is here undisputed that there are several express contracts (i.e., the Purchase Orders) governing the transactions between SpecSys and CMI.  Am. Compl. ¶¶ 38-39, 51-53, 55-56, 62, 66, 72-73; Answer ¶¶ 38-39, 51-53, 55-56, 62, 66, 72-73.  It is likewise undisputed that SpecSys invoiced CMI for work CMI now contends was "unauthorized"

and which CMI refuses to pay on that basis.[1]  Def.'s Resp. Br. at 20; Pls.' Reply Br. (Doc. No. 318) at 7.  The issue presented is one of pure law: whether SpecSys may pursue relief under the doctrine of quantum meruit to recover for work that is found to be "unauthorized" under the Purchase Orders but was rendered by SpecSys and knowingly accepted by CMI.  SpecSys argues, and the Court agrees, that, in accordance with the holding in *McCurdy* and subsequent cases, it may.[2]  Def.'s Resp. Br. at 20.

CMI argues that *McCurdy* is inapplicable because SpecSys seeks to recover for extracontractual work performed "*prior to*" termination of the Purchase Orders, whereas the plaintiff in *McCurdy* was allowed to recover under a quantum meruit theory for extracontractual work performed "*after* termination of the contract."  Pls.' Reply Br. at 7. CMI offers no reasoned argument for the significance of this distinction, and the Court is not persuaded that *McCurdy*'s holding should be so narrowly construed.  In the Court's view, *McCurdy* stands for the broader proposition that a plaintiff may pursue quantum meruit relief to recover for work it performed, which, for any number of reasons, falls outside the scope of the parties' existing contract.  This view is consistent with opinions from federal courts applying *McCurdy*.  *See Feldman*, 2013 WL 12131596 at *5 (holding

---

[1] SpecSys offers two examples of such work: (1) its review of CMI Master Controls; and (2) its creation of RM-6 Design Booklets.  Def.'s Resp. Br. at 20 (citing Doc. No. 283-9, 283-12, 283-10, 283-11, 283-28).

[2] Finding this argument to be dispositive, the Court does not reach SpecSys' argument that quantum meruit is available because CMI prevented and/or interfered with SpecSys' work.  *See* Def.'s Resp. Br. at 21.

that plaintiff could pursue recovery under a quantum meruit theory for services rendered prior to the execution of the parties' contract).

CMI further argues that summary judgment is warranted because "CMI received no benefit from any work SpecSys performed." Pls.' Br. at 6. Whether SpecSys rendered goods and/or services that actually benefitted CMI is a contested issue of fact, with each party submitting testimony and other evidence in support of its respective position. *Compare* Pls.' Br. at 3, *with* Def.'s Resp. Br. at 11 (dispute as to whether SpecSys delivered usable designs and drawings under Purchase Order 18643); Pls.' Br. at 3, *with* Def.'s Resp. Br. at 13 (dispute as to whether SpecSys rendered beneficial services to CMI under Purchase Order 18645); Pls.' Br. at 3, *with* Def.'s Resp. Br. 15 (dispute about whether SpecSys delivered usable items to CMI under Purchase Order 20501); Pls.' Br. at 4, *with* Def.'s Resp. Br. at 17 (dispute about whether SpecSys rendered beneficial services to CMI under PO 22015). As such, the Court is unable to determine, as a matter of law, that CMI did not benefit from any extracontractual work performed by SpecSys.

## CONCLUSION

For the reasons outlined above, Plaintiffs' Motion for Partial Summary Judgment on Defendant's Counterclaim for Quantum Meruit (Doc. No. 234) is DENIED.

IT IS SO ORDERED this 28th day of May, 2021.

CHARLES B. GOODWIN
United States District Judge