# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CMI ROADBUILDING, INC., and <br> CMI ROADBUILDING, LTD. <br>                Plaintiffs, <br> v. <br> SPECSYS, INC., <br>                Defendant. | Case No. CIV-18-1245-G |

## ORDER

Now before the Court is Plaintiffs' Motion to Strike Non-Retained Expert Kevin Wald (Doc. No. 215) and supporting brief (Doc. No. 218). Defendant has responded in opposition (Doc. No. 274) and Plaintiffs have replied (Doc. No. 307). The Court makes its decision based on the parties' written submissions.

### BACKGROUND

This lawsuit stems from a series of purchase orders (the "Purchase Orders") whereby Defendant SpecSys, Inc. ("SpecSys") agreed to manufacture mobile equipment and provide related design and engineering services to Plaintiff CMI Roadbuilding, Inc. ("CMI"). The Purchase Orders, which have been detailed in previous Orders of the Court, are summarized below:

- Purchase Order 17580, dated January 11, 2018, whereby SpecSys agreed to manufacture and assemble TR-4 machines for CMI (Doc. No. 78-16 at 2-11);

- Purchase Order 18643, dated March 2, 2018, whereby SpecSys agreed to perform engineering updates to the concept design for CMI's TP-4 machine (Doc. No. 78-26 at 9-12);

- Purchase Order 18644, dated March 2, 2018, whereby SpecSys agreed to create a manual for the TR-4 machine (Doc. No 78-26 at 13-15);

- Purchase Order 18645, dated March 2, 2018, whereby SpecSys agreed to provide control support services related to the TR-4 and TP-4 projects (Doc. No. 78-26 at 16-19);

- Purchase Order 20501, dated May 24, 2018, whereby SpecSys agreed to provide "engineering manpower" for the support and design of CMI mobile equipment over a three-month period (Doc. No. 78-33 at 2-5);

- Purchase Order 21234, dated July 10, 2018, whereby SpecSys agreed to manufacture various wiring harnesses for CMI (Doc. No. 78-36 at 3-9);

- Purchase Order 22015, dated August 20, 2018, whereby SpecSys agreed to develop, test, and debug software and controls on CMI's SP-5 machine and provide related engineering services (Doc. No. 78-46 at 2-5); and

- Purchase Order 22016, dated August 20, 2018, whereby SpecSys agreed to develop, test, and debug software and controls on CMI's TM-11 machine and provide related engineering services (Doc. No. 78-46 at 6-9).

By September 19, 2018, the parties' relationship had deteriorated to the point that CMI directed SpecSys to stop work on active purchase orders. Am. Compl. ¶ 79; Answer ¶ 79; Doc. No. 78-51. The parties soon became embroiled in a dispute about: (1) what amounts, if any, are due and owing under outstanding invoices; and (2) what items, if any, SpecSys is obligated to turn over to CMI. The dispute blossomed into the current lawsuit, which was filed on December 20, 2018 by CMI and its parent company CMI Roadbuilding, Ltd. (collectively, "Plaintiffs"). Plaintiffs advance various claims against SpecSys, including, but not limited to breach of the Purchase Orders and violation of the parties' Confidentiality and Non-Disclosure Agreement ("NDA").

On January 11, 2021, SpecSys filed its expert-witness list, identifying Kevin Wald

("Wald"), the company's Chief Executive Officer, as a "non-retained fact witness who is expected to offer expert opinions at trial." Doc. No. 170.  As an exhibit thereto, SpecSys attached a 20-page document, authored and signed by Wald, entitled "Subject Matter and Summary of Facts and Opinions" (the "Summary").  Doc. No. 170-1.  The Summary sets forth Wald's anticipated testimony regarding two topics: (1) SpecSys' attempted compliance with the terms of the Purchase Orders and NDA; and (2) the relevance and reliability of testimony from Plaintiffs' expert witnesses John Phillips ("Phillips") and John West ("West").

On January 21, 2021, Plaintiffs filed a notice of deposition advising of their intent to take Wald's deposition on February 1, 2021.  *See* Doc. No. 186.  The notice included a directive that Wald "bring with him to the deposition all documents relating to his opinions in his possession or under his control or to which he has access including complete and legible copies of any and all records, files, and documents, pertaining to any issues concerning this litigation."  *Id.* at 2.  Attached to the notice was a list of applicable items, including, but not limited to, Wald's "complete file in this matter relating to his opinions," "[a]ll materials . . . which [Wald] has reviewed, relied upon, and/or upon which his testimony . . . will be based," and "[a]ll documents that [Wald] provided to [SpecSys'] counsel or anyone acting on its behalf relating to his expert testimony."  Doc. No. 186-1, at 1.

Wald brought seven documents to his February 1, 2021 deposition, including his resume and a six-page document titled "Wald Facts & Opinions References."  Doc. No. 218-10.  SpecSys maintained that, because Wald is a non-retained expert, he was not

3

required to comply with Plaintiffs' demand for production of documents. *See* Doc. Nos. 218-6, 218-8. SpecSys further asserted that, "as CEO and long-time employee of [SpecSys], [Wald] has been exposed directly and indirectly to all the materials of the Company" and, therefore, the "scope and identity" of the materials underlying his opinions "cannot reasonably be identified." Doc. No. 218-8 at 2.

Plaintiffs filed the instant Motion on February 19, 2021, asking the Court to preclude Wald from offering expert testimony at trial. Plaintiffs assert that the Summary fails to satisfy the expert-disclosure requirements of Federal Rule of Civil Procedure 26(a)(2), and, therefore, Wald's opinion testimony should be excluded pursuant to Rule 37(c) of the Federal Rules of Civil Procedure.

## STANDARD OF DECISION

Federal Rule of Civil Procedure 26(a)(2) sets forth disclosure requirements for expert witnesses. Experts who are "retained or specially employed to provide expert testimony" must submit a report that satisfies the criteria listed in Fed. R. Civ. P. 26(a)(2)(B). With respect to non-retained experts, counsel must disclose "the subject matter on which the witness is expected to present evidence," together with "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The Advisory Committee Notes provide:

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.

4

Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.

Rule 26(a)(2)(C) is "intended to ensure that an opposing party has *some notice* of what the nonretained expert will testify about." *Sterling v. United States*, No. 3:18-CV-0526-D, 2020 WL 2425648, at *4 (N.D. Tex. May 12, 2020) (internal quotation marks omitted) (emphasis added), *aff'd*, 834 F. App'x 83 (5th Cir. 2020). Accordingly, the disclosures must, at a minimum, state actual opinions, "not merely topics of testimony," and must contain a "summary of the facts upon which the opinions are based." *Id.* (internal quotation marks omitted). "This does not mean that the disclosures must outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail," as such requirements "would make the Rule 26(a)(2)(C) disclosures more onerous than Rule 26(a)(2)(B)'s requirement of a formal expert report." *Hayes v. Am. Credit Acceptance, LLC*, No. 13-2413, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014).

Rule 37(c)(1) prescribes the remedy for a party's failure to comply with Rule 26(a):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

## ANALYSIS

### I. Plaintiffs Failed to Comply With Local Civil Rule 37.1

As an initial matter, the Court notes that Plaintiffs did not comply with Local Civil Rule 37.1, which requires, as a precondition to the filing of a motion relating to a discovery dispute, that the moving party "advise[] the court in writing that counsel personally have

5

met and conferred in good faith and, after a sincere attempt to resolve differences, have been unable to reach an accord." LCvR 37.1.

Plaintiffs' failure to comply with this rule is grounds for rejection of their Motion. *See Talley v. Time, Inc.*, No. CIV-14-853-D, 2018 WL 1079376, at *1 (W.D. Okla. Feb. 27, 2018) (declining to consider plaintiff's motion to exclude expert testimony under Fed. R. Civ. P. 37(c) based on plaintiff's noncompliance with Local Civil Rule 37.1). The Court will nonetheless adjudicate Plaintiffs' Motion on its merits and will consider Plaintiffs' noncompliance with Local Civil Rule 37.1 in the evaluation of whether the alleged deficiency should preclude Wald's testimony under Federal Rule of Civil Procedure 37(c).

II. *Whether the Summary Satisfies Fed. R. Civ. P. 26(a)(2)(C)*

Plaintiffs contend that the Summary is deficient because "at most it provides topics of testimony"—not actual opinions. Pls.' Br. (Doc. No. 218) at 11. As noted above, the Summary sets forth opinion testimony on two topics: (1) SpecSys' efforts to comply with the terms of the Purchase Orders and NDA; and (2) the relevance and reliability of testimony from Plaintiffs' experts.

    A.    <u>Wald's Opinions Regarding SpecSys' Efforts to Comply with the Purchase Orders and NDA</u>

The Summary is replete with opinions regarding SpecSys' attempted compliance with the Purchase Orders and NDA. For example, Wald opines that delays in the production of TR-4 machines under Purchase Order 17580 were occasioned, not by any act or omission of SpecSys, but by "substantial engineering errors" in the design

6

documents supplied by CMI.  Doc. No. 170-1 at 4.  According to Wald, "the design documents provided by CMI were not buildable in the form initially submitted to SpecSys and required hundreds of hours of additional engineering," thereby "caus[ing] delays and interfer[ing] with [the] timely complet[ion] [of] work."  *Id.*  Wald cites two additional reasons for production delays under Purchase Order 17580: (1) "The bill of materials that CMI initially submitted to SpecSys . . . was incomplete and did not contain an accurate list of all the parts necessary to build a TR-4"; and (2) CMI delayed in procuring the materials and component parts for which it was responsible under the terms of Purchase Order 17580.  *Id.* at 5.

Wald also provides opinions regarding the status of the TR-4 builds under Purchase Order 17580.  Wald states that "Unit 1 is complete, pending missing controls and software that would allow for test out and operation" and is presently "ready for integration of new controls and software."  *Id.* at 8-9.  According to Wald, Unit 1 "could be placed into testing and/or on job site(s) within weeks of software checkout and Cummins Engine acceptance."  *Id.* at 9.  Wald further opines that "Unit 2 is over 40% complete" based on "[his] review and hours bid versus hours consumed to date."  *Id.* at 8.

With respect to Purchase Order 18643, Wald explains that it is "typical" in the industry "that project routine meetings greatly reduce upon entering a Print Development phase."  *Id.* at 10.  Wald explains that this is because "product design decisions are mostly complete" at this juncture, and "the busy work of generating prints from the [computer-aided design] Digital models is at hand."  *Id.*  Wald further opines that certain long-lead items SpecSys purchased on CMI's behalf for production of a TP-4 machine that was

7

never built are "specialized parts" for which SpecSys has no use. *Id.* at 12.

With respect to Purchase Order 18644, Wald opines that SpecSys completed the TR-4 Parts Manual "as far as possible, given that CMI was still making design changes at the time of the stoppage of work." *Id.* Wald additionally states that SpecSys could not have completed the TR-4 Operation and Maintenance Manual "until the TR-4 is built and the code and display screen is complete." *Id.*

Wald provides the following opinions regarding SpecSys' efforts under Purchase Order 18645:

> SpecSys provided support and gave its opinion that CMI's code was not usable in its current form. Not only did the software come up short in allowing for Cummins Diesel Engine Certification on more than one CMI model, each and every machine model, and even each unit within models, was so cut-n-paste[d] together that support of sold units would be impossible. The lack of standardization of display screen, display icons, function blocks, I/O protocols, and variable names was a sign that the CMI developer was not properly trained in a structured approach to software and controls development. There appeared to be no revision control scheme across the many versions floating around that would allow for tracking of what unit had what version once future edits continued to occur.

*Id.* at 13.

With respect to Purchase Order 21234, Wald opines: (1) that "CMI's wiring harness designs contained multiple errors"; (2) that these design errors resulted in unanticipated delays on SpecSys' end; and (3) that SpecSys performed services for CMI outside Purchase Order 21234 by identifying the design errors, communicating the errors to CMI, and by being available to answer technical questions. *Id.* at 16-17.

Wald also provides opinions relevant to Plaintiffs' claim for breach of the NDA. For instance, Wald explains that SpecSys' act of "sending drawings to [third] party

8

vendors [is] . . . common in the industry." *Id.* at 20; *see also id.* at 7 ("utilizing support vendors is common place in the mobile industry").

The Court concludes that the Summary satisfies the requirements of Fed. R. Civ. P. 26(a)(2)(C) insofar as it concerns SpecSys' efforts to comply with the terms of the Purchase Orders and NDA.

### B. Wald's Opinions Regarding the Relevance and Reliability of Plaintiffs' Experts

On the topic of Plaintiffs' experts, the Summary states:

> I will . . . dispute the opinions and factual basis of both CMI's expert witnesses, including the damage opinions of Mr. John West . . . and the technical findings and opinions in Mr. John Phillips' report. Mr. West is not qualified to make his opinions, and his opinions are not relevant or reliable based on supportable facts . . . . Also, for each product model and Purchase Order identified, Mr. John Phillip's findings and opinions are incorrect and are based on incomplete and inaccurate information.

Doc. No. 170-1 at 20.

The Summary's generic reference to "technical findings" and "damage opinions" does not provide meaningful notice of the content of Wald's anticipated testimony. Likewise, the Summary fails to identify the factual basis for Wald's disagreement with Plaintiffs' experts and the reasons Wald believes they are unqualified to render reliable opinions in this case.

The Court concludes that this portion of the Summary is deficient under Rule 26(a)(2)(C).

### III. *Whether the Deficiency is Substantially Justified or Harmless*

The resulting question is whether to exclude Wald's anticipated testimony on the

9

topic of Plaintiffs' experts. Under Rule 37(c), such testimony may be allowed, despite the deficiencies in SpecSys' expert disclosures, if the deficiencies are "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952–53 (10th Cir. 2002) (internal quotation marks omitted). The following factors should guide the Court's determination: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* at 953 (internal quotation marks omitted).

The Court concludes that the foregoing factors militate in favor of allowing Wald's expert testimony.

      A.      <u>Unfair Surprise/Prejudice</u>

Plaintiffs' counsel deposed Wald on February 1, 2021, questioning him at considerable length about his anticipated testimony concerning Plaintiffs' experts. Wald testified, among other things: (1) that Phillips is not qualified to render opinions about the equipment and services at issue because "he is not a controls and electrical experienced person"; (2) that Phillips' opinions are unreliable because he failed to review significant documents and did not inspect the product(s) in question; (3) that Phillips' opinions are predicated on the mistaken belief that "[SpecSys] had authority to make design changes"; (4) that Phillips incorrectly concluded that certain services and materials supplied by SpecSys were "of no value to CMI"; (5) that West's financial forecasts and projections

10

are unreliable based, in part, on his use of outdated accounting information; and (6) that West's report includes losses and damages that do not align with the allegations advanced by CMI. Doc. No. 218-3, at 13-22.

Although Wald acknowledged his inability to recall each disputed point from memory, his deposition testimony does not reflect the degree of unpreparedness suggested by Plaintiffs. *See* Pls.' Br. at 12. To the contrary, the level of detail supplied through Wald's deposition testimony undercuts Plaintiffs' claim of unfair surprise and prejudice.

B. Curability

Plaintiffs have not shown they took meaningful steps to cure any prejudice occasioned by deficiencies in SpecSys' disclosures and/or any perceived deficiencies in Wald's deposition testimony. Wald repeatedly indicated that he would be able to supply additional detail regarding the applicable testimony if permitted to review the relevant materials. *See* Doc. No. 218-3, at 12-22. Yet Plaintiffs do not identify any efforts they took in pursuit of that information. Plaintiffs could have requested the information via written discovery, pursued a supplemental deposition of Wald, and/or asked the Court for an order compelling Wald to more fully comply with Rule 26(a)(2)(C). At a minimum, Plaintiffs should have conferred with SpecSys, as required by this Court's Local Rules, in an effort to resolve the dispute prior to seeking judicial intervention. *See* LCvR 37.1. Their failure to do so weighs strongly against the requested relief. *See Galbraith v. State Farm Fire & Cas. Co.*, No. CIV-16-1227-SLP, 2018 WL 8335488, at *4 (W.D. Okla. July 20, 2018) (holding that "Plaintiffs' apparent failure to even ask Defendant to supplement [its expert's] report" cut against Plaintiffs' request for exclusion of the expert's

11

testimony); *Castle-Foster v. Cintas Corp. No. 2*, No. CV419-139, 2021 WL 601877, at *11 (S.D. Ga. Feb. 16, 2021) ("[A] party cannot lie in wait and thereby hope to deprive a party of their experts particularly when, as here, it appears that any discrepancy was clear to defendants at an early time, yet they chose to do nothing about it.").

Additionally, the Court observes that "[a]ny prejudice can be cured by way of cross examination or use of countervailing expert testimony." *Anderson v. Hale*, No. CIV-02-0113-F, 2002 WL 32026151, at *4 (W.D. Okla. Nov. 4, 2002); *see also Jacobson,* 287 F.3d at 953 (explaining that the purpose of expert disclosures is to give opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses" (internal quotation marks omitted)).

C.  Disruption of Trial

The Court is unable to conclude that Wald's testimony would disrupt the trial, which has yet to begin. The Court is not here confronted with "a mid-trial offer of undisclosed expert testimony." *Prien v. AM Gilardi & Sons, Inc.*, No. CIV-01-1020-F, 2003 WL 25764896, at *6 (W.D. Okla. June 11, 2003).

D.  Bad Faith

Finally, there is no evidence that SpecSys acted in bad faith. Plaintiffs suggest otherwise, citing Wald's failure to bring documents to his deposition in accordance with Plaintiffs' demand. *See* Pls.' Br. at 12. Plaintiffs have not shown they were entitled to the requested documentation in the first place, however. Plaintiffs cannot use an ancillary discovery mechanism to force the production of documents that are required only for retained experts. *See D.G. v. Henry*, No. 08-CV-74, 2011 WL 2746180, at *2 (N.D. Okla.

July 13, 2011) (holding that plaintiff could not use discovery requests to circumvent the restrictions on disclosures from non-retained experts); *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64, 2010 WL 1330002, at *5 (D. Utah Mar. 29, 2010).

In sum, the Court concludes that any deficiencies in SpecSys' disclosures were substantially justified and harmless for purposes of Rule 37(c).

## CONCLUSION

For the reasons outlined above, Plaintiffs' Motion to Strike Non-Retained Expert Kevin Wald (Doc. No. 215) is DENIED.

IT IS SO ORDERED this 28th day of May, 2021.

_____
CHARLES B. GOODWIN
United States District Judge