## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CMI ROADBUILDING, INC., and | ) | |
| CMI ROADBUILDING, LTD. | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Case No. CIV-18-1245-G** |
| | ) | |
| SPECSYS, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Now before the Court is Plaintiffs' Motion for Partial Summary Judgment on Count V (Doc. No. 224) and supporting brief (Doc. No. 225). Defendant has responded in opposition (Doc. No. 278) and Plaintiffs have replied (Doc. No. 312). The Court makes its decision based on the parties' written submissions.

*I.    Background*

This lawsuit stems from a series of purchase orders whereby Defendant SpecSys, Inc. ("SpecSys") agreed to manufacture mobile equipment and provide related design and engineering services to Plaintiff CMI Roadbuilding, Inc. ("CMI"). The business relationship soured, resulting in claims and counterclaims, including, as relevant to the Motion under review, Plaintiffs' claim for breach of Purchase Order 18645 ("PO 18645"). *See* Am. Compl. (Doc. No. 78) ¶¶ 111-116.

As depicted in the image below, PO 18645 states: "This [purchase order] is being

issued for TR-4 Development Project[1] & TP-4 Engineering Project[2] . . . . Per the attached

Proposal reference, please proceed with Control Support Services in accordance with your

proposal referenced above."  Doc. No. 78-26 at 16.  Line 1 lists a price of $1,000 for

"Control Support Services" on the "TR-4 Development Project."  *Id.*  Line 2 lists a price

of $1,000 for "Control Support Services" on the "TP-4 Engineering Project."  *Id.*

| PO Number: | 18645 | Purchase Order | | Page:    1 of 4 |
|---|---|---|---|---|

| Vendor: | Ship To: |
|---|---|
| Angela Hanson<br>SpecSys Inc<br>121 North 1st Street<br>Montevideo MN 56265<br>UNITED STATES | TR-4 Development & TP-4 Engineering Project<br>Main Plant<br>315 Hudiburg Cir<br>Oklahoma City OK 73108-1008<br>UNITED STATES |
| **Phone:** 320-269-3227          **Fax:** 320-564-3954<br>angelah@specsys.org | |

| Ship Via: Ship Via Default | Order Date: 3/2/2018 | Terms: Net 30 Days |
|---|---|---|
| | Prepaid Freight: No | Resale No: 1051852800 |

*3-2-2018 :  This PO is being issued for TR-4 Development  Project  & TP-4 Engineering Project  ( Described in PO# 18643 )*

*Per the attached Proposal reference, please proceed with Control Support Services in accordance with your proposal referenced above.*
*Your key contacts for this project are Chad Harrison, Chief Engineer and Gerard Stoehr, Project Facilitator.*
*Any changes in scope of price must be authorized in advance by above contacts.*

*Payment terms:  monthly billings.*

| Line | Part Number/Rev/Description | | Order Qty. | Unit Price | Ext Price | Tax |
|---|---|---|---|---|---|---|
| 1 | TR-4 Development  Project<br>Control Support Services | | 1.00 EA<br>Each | 1,000.00/1 | 1,000.00 | No |
| **- Shipping Release Requirement –** | | **Due Date** | **Quantity** | | | |
| | | 3/2/2018 | 1.00 EA | | | |

| Line | Part Number/Rev/Description | | Order Qty. | Unit Price | Ext Price | Tax |
|---|---|---|---|---|---|---|
| 2 | TP-4 Engineering Project<br>Control Support Services  (Per PO# 18643) | | 1.00 EA<br>Each | 1,000.00/1 | 1,000.00 | No |
| **- Shipping Release Requirement –** | | **Due Date** | **Quantity** | | | |
| | | 3/2/2018 | 1.00 EA | | | |

---

[1] The TR-4 Development Project is memorialized by Purchase Order 17580, whereby SpecSys agreed to manufacture and assemble four TR-4 machines for CMI.  *See* Doc. No. 78-16 at 2-11.

[2] The TP-4 Engineering Project is memorialized by Purchase Order 18643, whereby SpecSys agreed to perform engineering updates to the concept design for CMI's TP-4 machine.  *See* Doc. No. 78-26 at 9-12.

The "proposal" referenced in PO 18645 is PRP 022218_5816 (the "Proposal"), dated February 22, 2018, whereby SpecSys offered to "provide support services for the IFM control designs currently being utilized/implemented by CMI [] across [its] mobile construction productions line." Doc. No. 78-26 at 7.  As depicted in the image below, the Proposal identified the "initial effort" as involving "the J1939 CANBUS protocol, and Cummins engine data communicating with the IFM control and display utilized on the TR-4 and TP-4." *Id.*  It proposed an hourly rate of $100 per hour, not to exceed 20 hours, and listed a number of deliverables, including a "project Kick Off Meeting . . . for each initiative," "Performance & configuration specifications discussed with CMI staff," "Scope of Work discussed with CMI staff," and "IFM Controls/Code Development support/effort/labor for each initiative." *Id.*



**Proposal:**  CMI Roadbuilding Controls Support Services
**Client:**  CMI Roadbuilding, Inc.

**Proposal Date:**  2/22/18
**Proposal Valid Until:**  3/1/18
**Estimated Start Date:**  3/5/18
**Estimated Completion Date:**  TBD

**Description of Effort:**
CMI Roadbuilding Desires SpecSys, Inc. to periodically provide support services for the IFM control designs currently being utilized / implemented by CMI Roadbuilding across their mobile construction products line.

The initial effort will be in regards to the J1939 CANBUS protocol, and Cummins engine data communicating with the IFM control and display utilized on the TR-4 and TP-4.

**Deliverables:** SpecSys, Inc. will deliver the following upon completion of this effort:
- Project Kick Off Meeting via net meeting for each initiative requested
- Performance & configuration specifications discussed with CMI staff
- Scope of Work discussed with CMI staff
- Net meetings as needed
- IFM Controls / Code Development support / effort / labor for each initiative
- Detailed billing for each initiative
- Travel, if required, will be handled via ECO prior to any trips

**Price:**  $100  21 hrs.  $2,000

| Description | Price | Contract Type | Anticipated Finish Date |
|---|---|---|---|
| Support Services | $ 102.50 / Hr Not to Exceed $8200.00 | Time & Material | TBD |

On April 4, 2018, CMI issued a change order "increasing line 1 for an additional 20 hours of technical assistance" for "Control Support Services" on the "TR-4 Development Project." Doc. No. 225-9 at 1. The relevant portion of the change order is depicted in the image below.

| PO Number: 18645 | Purchase Order | Page: 1 of 4 |
|---|---|---|

| Vendor: | Ship To: |
|---|---|
| Angela Hanson<br>SpecSys Inc<br>121 North 1st Street<br>Monteviedo MN 56265<br>UNITED STATES | TR-4 Development & TP-4 Engineering Project<br>Main Plant<br>315 Hudiburg Cir<br>Oklahoma City OK 73108-1008<br>UNITED STATES |
| **Phone:** 320-269-3227      **Fax:** 320-564-3954<br>angelah@specsys.org | |

| Ship Via: Ship Via Default | Order Date: 3/2/2018 | Terms: Net 30 Days |
|---|---|---|
| | Prepaid Freight: No | Resale No: 1051852800 |

*3-2-2018 : This PO is being issued for TR-4 Development Project & TP-4 Engineering Project ( Described in PO# 18643 )*

*Per the attached Proposal reference, please proceed with Control Support Services in accordance with your proposal referenced above.*
*Your key contacts for this project are Chad Harrison, Chief Engineer and Gerard Stoehr, Project Facilitator.*
*Any changes in scope of price must be authorized in advance by above contacts.*

*Payment terms: monthly billings.*

*4-4-2018 ** REV> 1 * I am increasing line 1 for an additional 20 hours of technical assistance at ($100.00) per hour*
*Les Bebchick. Thanks Angela*

| Line | Part Number/Rev/Description | | Order Qty. | Unit Price | Ext Price | Tax |
|---|---|---|---|---|---|---|
| 1 | TR-4 Development Project<br>Control Support Services | | 30.00 EA<br>Each | 100.00/1 | 3,000.00 | No |
| - Shipping Release Requirement - | **Due Date** | **Quantity** | | | | |
| | 3/2/2018 | 30.00 EA | | | | |

| Line | Part Number/Rev/Description | | Order Qty. | Unit Price | Ext Price | Tax |
|---|---|---|---|---|---|---|
| 2 | TP-4 Engineering Project<br>Control Support Services  (Per PO# 18643) ($100 per hour) | | 10.00 EA<br>Each | 100.00/1 | 1,000.00 | No |
| - Shipping Release Requirement - | **Due Date** | **Quantity** | | | | |
| | 3/2/2018 | 10.00 EA | | | | |

On May 31, 2018, SpecSys invoiced CMI $2,000 for 20 hours of technical assistance under PO 18645, which CMI paid without objection. *See* Doc. No. 225-17.

The instant lawsuit was filed on December 20, 2018, by CMI and its parent company CMI Roadbuilding, Ltd.[3] (collectively, "Plaintiffs").  Plaintiffs allege, among other things, that SpecSys "fail[ed] to perform its obligations as set forth in PO 18645." Am. Compl. ¶ 114.  The substance of these obligations is the subject of a fundamental disagreement between the parties, as reflected in the briefs submitted in support of and in opposition to the Motion under review.

CMI's position is that pursuant to PO 18645, SpecSys promised to resolve a coding error in the TR-4 machine that was preventing the engine from communicating with the machine's display screen.[4]  Pls.' Br. (Doc. No. 225) at 4.  CMI contends that SpecSys engineer Dane Kjer ("Kjer") fixed the code, that SpecSys invoiced CMI $2,000 for the project, and that, despite CMI's payment of the invoice, SpecSys refused to deliver the corrected code to CMI.  *Id.* at 3-5.

SpecSys denies that it agreed "to resolve all errors in the code for a fixed price or in the very limited number of hours authorized."  Def.'s Resp. Br. (Doc. No. 278) at 9. SpecSys argues that PO 18645 contemplated support services on an hourly basis and that there was no fixed deliverable.  According to SpecSys, the $2,000 invoice corresponds to

---

[3] CMI Roadbuilding, Ltd. is the alleged owner of certain information that is the subject of a number of Plaintiffs' claims.  Am. Compl. ¶ 9.

[4] It is CMI's position that PO 18645 constituted an offer, which SpecSys "accepted . . . by beginning performance."  Am. Compl. ¶ 113.  The Court need not decide whether PO 18645 constituted the transaction's offer or acceptance; either way, the substance of PRP 022218_5816 was made part of the contract under the doctrine of incorporation by reference.  *Cf. Mead Corp. v. McNally-Pittsburg Mfg. Corp.*, 654 F.2d 1197, 1205 (6th Cir. 1981).

"time spent in reviewing the code, analyzing the code, debugging the code, writing code, communicating with CMI," and, ultimately, arriving at "the conclusion that the code was not usable in its current form." *Id.* at 13.   SpecSys contends that the parties executed subsequent agreements to continue the code resolution. *Id.*

## II.   Summary Judgment Standard

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information,

6

affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

• demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]."  *Liberty Lobby*, 477 U.S. at 252.

III.   *Analysis*

The foundational issue posed by Plaintiffs' Motion involves the scope of SpecSys' undertaking pursuant to PO 18645, which, in turn, presents an issue of contract construction.  Under Oklahoma law,[5] the "paramount objective" of contract construction is "to ascertain and give effect to the intention of the parties."  *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1015 (10th Cir. 2018).  Where a contract is unambiguous, the parties' intention must be gleaned "from a four-corners' examination of the instrument."  *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 (Okla. 2003); *see also Campbell v. Indep. Sch. Dist. No. 01 of Okmulgee Cnty.*, 77 P.3d 1034, 1039 (Okla. 2003) ("There is no need to resort to extrinsic evidence to ascertain a contract's meaning where

---

[5] PO 18645 includes a choice-of-law provision calling for the application of Oklahoma law.  *See* Doc. No. 78-26 at 19.

7

its language is clear and explicit.").  If, on the other hand, a contract is ambiguous, its meaning may be ascertained by reference to extrinsic evidence.  *Fowler v. Lincoln Cnty. Conservation Dist.*, 15 P.3d 502, 507 (Okla. 2000).

Whether a contract is ambiguous is a question of law to be determined according to the following principles:

> (1) the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity; (2) a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others; (3) a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect; (4) words of a contract are to be given their ordinary and popular meaning; and (5) a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.

*Lawlis v. Moore Iron & Steel Corp.*, No. CIV-13-823-D, 2015 WL 9474291, at *4–5 (W.D. Okla. Dec. 28, 2015) (citing Okla. Stat. tit. 15, §§ 154, 155, 157, 159, 160, 163). A contract is ambiguous if, applying the foregoing principles, it can be reasonably interpreted as having two or more meanings.  *K & K Food Servs. v. S & H, Inc*., 3 P.3d 705, 708 (Okla. 2000).

The court may interpret an ambiguous contract at the summary judgment stage if the extrinsic evidence presented does not create a genuine dispute of material fact.  *See Valley View Dev., Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs*, 721 F. Supp. 2d 1024, 1045 (N.D. Okla. 2010); *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1214 (10th Cir. 2009).  Otherwise, the meaning of an ambiguous contract is "a mixed question of law and fact . . . for jury determination under proper instructions."  *Fowler*, 15 P.3d at 507; *see also Cinocca v. Baxter Labs., Inc*., 400 F. Supp. 527, 532 (E.D. Okla. 1975) ("[C]ases

involving ambiguous contracts are inappropriate for summary judgment as there are unresolved material issues of fact to be determined by the trier of fact.").

In this case, Plaintiffs have presented extrinsic evidence to support their proposed construction of PO 18645—most notably, deposition testimony from various witnesses and emails preceding the issuance of PO 18645 and the Proposal. *See* Pls.' Br. at 2-5. SpecSys, too, points to extrinsic evidence—in some instances, the same deposition testimony on which Plaintiffs rely—to support its proposed construction and argues that other evidence on which Plaintiffs rely is irrelevant and/or inadmissible. *See* Resp. Br. (Doc. No. 278) at 6-13.

Applying the authorities cited above, the Court concludes that PO 18645 is ambiguous as to the scope of work required and that the extrinsic evidence cited in the parties' briefing reflects a genuine dispute of material fact as to the resolution of that ambiguity. Thus, summary judgment is not appropriate on this claim. *See Valley View*, 721 F. Supp. 2d at 1045 (holding that "material factual disputes regarding the extrinsic evidence in the record preclude[d] summary judgment in favor of [the plaintiff]").

IV.    *Plaintiffs' Rule 56(g) Request*

Rule 56(g) of the Federal Rules of Civil Procedure states that "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute." Fed. R. Civ. P. 56(g). Invoking this rule, Plaintiffs broadly request an order "identifying each material fact relevant to [their] [claim for breach of PO 18645] that is not genuinely in dispute." Pls.' Br. at 9. The Court declines to do so in the exercise of its discretion, as there remain significant factual

disputes pertaining to Plaintiffs' claim for breach of PO 18645.  *See* Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment ("Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established."); 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2737 (4th ed. 2021) ("The question whether to exercise [the] authority [to establish undisputed facts under Rule 56(g)] is within the court's discretion.").

CONCLUSION

For the reasons outlined above, Plaintiffs' Motion for Partial Summary Judgment on Count V (Doc. No. 224) is DENIED

IT IS SO ORDERED this 28th day of May, 2021.

CHARLES B. GOODWIN
United States District Judge