# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CMI ROADBUILDING, INC., and <br> CMI ROADBUILDING, LTD. <br><br> Plaintiffs, <br><br> v. <br><br> SPECSYS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-18-1245-G |

## ORDER

Now before the Court is the Omnibus Motion in Limine (Doc. No. 357) filed by Defendant SpecSys, Inc. ("SpecSys"). Plaintiffs CMI Roadbuilding, Inc. ("CMI") and CMI Roadbuilding, Ltd. have responded in opposition (Doc. No. 375), and the Motion is now at issue.

This lawsuit stems from a series of purchase orders (the "Purchase Orders") whereby SpecSys agreed to manufacture mobile equipment and provide related design and engineering services to CMI. The core issues in the case are (1) whether SpecSys breached the Purchase Orders and/or the parties' Confidentiality and Non-Disclosure Agreement ("NDA"); (2) what amounts, if any, CMI owes SpecSys under outstanding invoices and for work otherwise performed by SpecSys and accepted by CMI; and (3) what items, if any, SpecSys is obligated to turn over to CMI. The matter is set on the Court's June 2021 jury-trial docket.

STANDARD OF DECISION

A motion in limine is a "pretrial request that certain inadmissible evidence not be

referred to or offered at trial." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (emphasis and internal quotation marks omitted). It "is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995). A court's in limine rulings are preliminary and "subject to change as the case unfolds." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## DISCUSSION

### I. *Opinion Testimony Regarding Damages*

SpecSys first argues that certain types of damages at issue in this litigation cannot be proven without expert testimony and that—because the only disclosed and permitted opinion testimony on damages is that to be offered by Plaintiffs' expert John West in relation to lost sales—all other opinion testimony regarding these types of damages should be disallowed per Rule 701 of the Federal Rules of Evidence. Def.'s Mot. at 9-11. Plaintiffs respond that Rule 701 does not categorically preclude lay witness testimony concerning damages. Pls' Resp. at 1-3.

Rule 701 "expressly prohibits the admission of testimony as lay witness opinion if it is based on 'specialized knowledge.'" *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citing Fed. R. Evid. 701) (holding that CEO of company could not testify as to damages model concerning "moving averages, compounded growth rates, and S-curves" because they were "technical, specialized subjects"). The Tenth Circuit has instructed, however, that a witness with personal knowledge of and experience with a company may offer a "straightforward opinion as to lost profits using conventional

2

methods based on [the company's] actual operating history." *Id.* at 929-30 (citing cases where "courts found business owners' testimony admissible under Rule 701 because the owners had sufficient personal knowledge of their respective businesses *and* of the factors on which they relied to estimate lost profits" and where "the owners offered valuations based on straightforward, common sense calculations").

The parties have not identified the testimony at issue with sufficient specificity to allow the Court to agree (or disagree) that the types of damages at issue[1] are, by their nature, too complicated to explain or compute without technical or specialized knowledge. Accordingly, this request is DENIED.

## II. *Statements Implying that Plaintiffs Need Not Pay for Goods and Services that Were Not Delivered*

SpecSys next seeks exclusion of statements suggesting that CMI "does not have to reimburse or pay SpecSys for goods purchased and services provided by SpecSys because SpecSys has not yet delivered them." Def.'s Mot. at 12. SpecSys predicates this argument on its theory that SpecSys "has a valid security interest and statutory lien that is properly perfected by possession over unpaid goods and services." *Id.*

To accept SpecSys' argument would require the Court to rule on factual questions still at issue. This request is DENIED. *See* 75 Am. Jur. 2d *Trial* § 42 (2021) ("The use

---

[1] SpecSys points to "damages relating to delays in brin[g]ing products to the marketplace," "costs associated with finding other vendors to perform the work," and "lost profits," as such damages relate to the alleged breach of Purchase Orders. SpecSys further points to "lost sales," "lost profit," "lost good will," and "other loss of business assets," as such damages relate to the alleged conversion. *See* Def.'s Mot. at 10 (internal quotation marks omitted).

of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss.")

   III.   *Statements Conveying an Impression of Wealth*

SpecSys requests that the Court exclude all references to the "Wald Family of Companies," and any statement conveying the impression that Kevin Wald, his family, or SpecSys is wealthy, including statements regarding ownership of a boat and jet. Def.'s Mot. at 12-13. SpecSys contends that such statements are not relevant and are highly prejudicial. *Id.* Plaintiffs respond that they "have no intention of presenting evidence to convey the wealth of SpecSys" but plan to offer evidence "regarding the operation of SpecSys, the associated companies, and its parent [company] Ritalka[,] [Inc.]" Pls.' Resp. at 4-5.

In light of Plaintiffs' response, the Court concludes that SpecSys' request is moot and DENIES the request on that basis. Consistent with their representation to the Court, Plaintiffs shall refrain from referencing assets of Mr. Wald and SpecSys that bear no relevance to this litigation.

   IV.   *Evidence of Disputes and Lawsuits with Customers*

Citing Federal Rule of Evidence 404(b), SpecSys seeks to exclude evidence pertaining to lawsuits or disagreements between SpecSys and its other clients. Def.'s Mot. at 13-14. In response, Plaintiffs reference a prior legal dispute in which SpecSys alleged that production delays were occasioned by the actions/inactions of its client. Pls' Resp. at 5-6. Plaintiffs argue that these allegations are relevant insofar as they are "akin" to

4

SpecSys' allegations in this lawsuit. *Id.* at 6.

Rule 404(b) prohibits the admission of evidence "of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Plaintiffs' explanation for the relevance of the other lawsuit—that SpecSys' prior allegations show its propensity to blame clients for its failure to meet contractual obligations—merely reflects a purpose prohibited by Rule 404(b)(1). Absent a showing of a purpose permitted under Rule 404(b)(2), evidence of other disputes and lawsuits will be excluded.

The request is therefore GRANTED.

V. *Testimony that a Work Order Detail is a Bill*

SpecSys requests that Plaintiffs "be prohibited from showing a witness a Work Order Detail and/or asking any witness (that did not invoice CMI) a leading question with the phrase, 'you billed my client.'" Def.'s Mot. at 15-16. SpecSys argues that billing was done through invoices and the Work Order Details merely indicate hours that certain employees log against a particular daily work order. SpecSys argues that calling a Work Order Detail a "bill" is misleading in general and, further, confusing because a Work Order Detail "does not necessarily show all the hours put in on a particular project." *Id.* at 15.

The Court agrees that, as a general matter, it would misstate evidence and confuse

5

the jury to refer to a Work Order Detail as a bill when it is not. The Court GRANTS SpecSys' request to prevent the parties from referring to a Work Order Detail as a bill at trial. Beyond that, whether any particular question is improper must be determined based on the exact question and context.

VI. *Photographs and Opinions Regarding Completeness of TR-4 Machines by CMI's Aaron Bottorff*

SpecSys seeks to exclude photographs of the TR-4 machines taken by Aaron Bottorff on or about August 29, 2018, arguing that, because the photographs do not show the current status of the machines, the photographs are not relevant and will confuse the jury and prejudice SpecSys. Def.'s Mot. at 16-18. SpecSys contends that it would be "highly prejudicial for CMI to present pictures of an incomplete machine when it had breached its own obligations to supply parts." *Id.* at 17 (arguing that at the time Mr. Bottorff took the pictures, "CMI had not yet procured all the parts for which it was responsible in order for SpecSys to build the first TR-4 [machine]" and "CMI was *still* fixing design errors"). SpecSys also notes that the parties resumed work on the TR-4 in 2019. *Id.* Plaintiffs respond that, pursuant to the applicable purchase order, the deadline for the machine's completion was in May 2018 and that the parties' discussions in 2019 did not result in an agreement. *Id.* at 7-8.

The photographs are relevant to show the condition of the TR-4 machines on the date the pictures were taken. The reasons for the condition of those machines on that date and differences in condition before or after that date, are factual issues that the parties may address at trial. This request for exclusion is DENIED.

SpecSys also seeks to exclude opinion testimony from Mr. Bottorff regarding the completeness of the machines on the date in question. SpecSys argues that such opinion testimony is improper because it "require[s] specialized knowledge of the manufacturing effort as to the percentage of completion," and Mr. Bottorff was not disclosed as an expert. Def.'s Mot. at 18.

Mr. Bottorff may testify to his own observations of the machines in question, including—if supported by facts establishing knowledge—his view of the completeness of the work at that time. Mr. Bottorff may not, however, offer opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). SpecSys' request is to this extent DENIED.

VII. *Evidence of Workplace Injuries and Death of SpecSys Employee*

SpecSys requests that Plaintiffs be prohibited from raising at trial any reference to workplace injuries or a fatal accident occurring on SpecSys' property. Def.'s Mot. at 18. Plaintiffs respond that they do not intend to inquire into these matters. Accordingly, this request is DENIED as moot. Pls' Resp. at 8.

VIII. *Evidence and Argument Concerning ISO Policies and Requirements*

SpecSys seeks to preclude Plaintiffs' experts from offering opinions concerning whether SpecSys "followed its ISO:9001 policies and procedures." Def.'s Mot. at 19.[2]

---

[2] SpecSys also requests that Plaintiffs be prohibited from misrepresenting the language of the ISO at trial. Given the lack of specificity of this request and SpecSys' failure to tie the request to a rule of evidence, the Court DENIES the request without prejudice. *See Shotts*, 2018 WL 4832625, at *1.

SpecSys argues that Plaintiffs' experts did not identify such opinions in their Rule 26(a)(2) disclosures. *See* Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(C)(ii). Plaintiffs did not respond to this specific argument.

Opinion testimony that was subject to the disclosure requirements of Rule 26(a)(2) but not so disclosed is barred from presentation at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Because Plaintiffs have not attempted to make this showing, the Court GRANTS this request for exclusion of expert testimony.[3]

IX. *Evidence and Argument Concerning Incorporation of Competitors' Designs*

SpecSys seeks exclusion of the opinions of Plaintiffs' expert John Phillips regarding how "the TP-4 may contain design work plagiarized from a competitor's machine." Def.'s Mot. at 20-22 (internal quotation marks omitted). Citing Rules 403 and 602 of the Federal Rules of Evidence, SpecSys argues that the proposed testimony should be excluded as speculative and overly prejudicial.[4] *Id.* SpecSys' Rule 602 challenge has no merit, as that rule "does not apply to a witness's expert testimony under Rule 703." Fed. R. Evid. 602.

As to SpecSys' argument that the probative value of the testimony is substantially outweighed by a danger of unfair prejudice under Rule 403, the Court concludes that

---

[3] The admissibility of lay opinion testimony on the subject matter was not raised in SpecSys' motion and therefore is not considered by the Court.

[4] Plaintiffs contend that this challenge should have been raised in SpecSys' *Daubert* motion pertaining to this expert. *See* Doc. No. 212. Because SpecSys did not frame its request as a Rule 702 or *Daubert* challenge, the Court shall not consider the propriety of exclusion on those bases.

8

exclusion at this juncture would be premature, as the decision may turn "upon the character of the other evidence admitted at trial." *Richardson*, 186 F.3d at (internal quotation marks omitted) ("Normally, such weighing should be done against a backdrop of the actual evidence at trial, making a final decision in a pretrial hearing highly unlikely.").

For these reasons, the Court DENIES the request for exclusion.

X. *Evidence and Argument that TR-4 Materials Were Used on Other Projects*

SpecSys argues that Plaintiffs should not be permitted to speculate as to whether "certain parts provided by CMI or certain raw materials purchased by SpecSys were used in other projects." Def.'s Mot. 22. Because SpecSys fails to identify the specific evidence it seeks to exclude, the Court DENIES the request. *See* Shotts, 2018 WL 4832625, at *1 ("[M]otions in limine that generally lack specificity as to particular evidence are properly denied.").

XI. *Opinions Concerning the Content of the Deliverables*

SpecSys seeks to exclude opinion testimony that is critical of the "deliverables" SpecSys provided to CMI, arguing that these opinions require the scientific knowledge of an expert. Def.'s Mot. at 22-23. SpecSys further argues that, because CMI's sole technical expert John Phillips was not critical of many of the deliverables when discussing them during his deposition, he should not be permitted to "offer[] any new critical opinions about the substance of any of these deliverables [at trial]." Def.'s Mot. at 23.

To the extent SpecSys requests that the Court limit Mr. Phillips' testimony to the opinions stated in his deposition, the request is DENIED. The scope of expert testimony

9

is confined by Rule 26(a)(2) disclosures, not deposition testimony. To the extent SpecSys requests exclusion of all lay opinion testimony regarding the nature or quality of the deliverables, the request is likewise DENIED. SpecSys' conclusory statement that these opinions require specialized, technical knowledge is insufficient to support exclusion at this stage. SpecSys may reassert its argument for the Court's assessment "against a backdrop of the actual evidence at trial." *Richardson*, 186 F.3d at 1276.

XII. *Expert Opinions of John Phillips Beyond His Report*

SpecSys next requests that the Court prohibit Plaintiffs' expert John Phillips from offering opinions at trial beyond those disclosed in his report. Def.'s Mot. at 23-24. Plaintiffs respond that they do not anticipate that Mr. Phillips will present new opinions on direct examination. Accordingly, this request is DENIED as moot.

XIII. *Opinions of Lay Witnesses Requiring Specialized Knowledge*

Citing Rule 701 of the Federal Rules of Evidence, SpecSys broadly requests that Plaintiffs' lay witnesses be prohibited from opining on scientific, technical, or other specialized matters within the exclusive purview of expert witnesses. Def.'s Mot. at 24-25. In the absence of any indication from SpecSys as to the specific evidence it seeks to exclude under Rule 701, the request is DENIED. *See Hussein v. Duncan Reg'l Hosp., Inc.*, No. CIV-07-0439-F, 2009 WL 10672480, at *1 (W.D. Okla. Oct. 20, 2009) (Without a detailed presentation of the facts which give rise to the issue sought to be addressed by the motion in limine, a motion in limine amounts to little more than a request that the court faithfully apply the rules of evidence. That is not the office of a motion in limine.").

XIV. *Evidence and Argument that Payment for TP-4 Parts was Contingent on Parts Having a Return Policy*

SpecSys seeks exclusion of evidence and argument that CMI "does not have to reimburse SpecSys for long-lead TP-4 parts SpecSys purchased" because the parts did not come with return policies. Def.'s Mot. at 25-27. SpecSys contends the evidence is "irrelevant and could mislead the jury into believing that a return policy was somehow required." *Id.* at 27. SpecSys points to a proposal for "TP-4 Production Long Lead Purchasing," signed by CMI's Les Bebchick, which SpecSys notes does not contain a requirement that the parts have a return policy. *See* Doc. No. 357-18. Plaintiffs respond that SpecSys "did not have a contract to build the TP-4," and that the issue is one of "interpretation of the agreement," which should be "analyzed during the presentation of evidence at trial." Pls.' Resp. at 13.

Whether the absence of a return option affected the damages incurred upon any failure to reimburse is a factual dispute to be resolved at trial. This request for exclusion is DENIED.

XV. *Evidence and Argument Concerning Mechanical Engineers' Degrees*

Arguing that it would be misleading to the jury, SpecSys seeks exclusion of evidence or argument suggesting that SpecSys did not have engineers with a "controls engineering degree" or a "powertrain engineering degree," or that SpecSys otherwise did not have "adequate degreed engineers on staff to complete PO 20501 or any other Purchase Order." Def.'s Mot. at 27-28. SpecSys argues that it was not contractually obligated, under PO 20501 or otherwise, to supply engineers with degrees in these areas

11

and that, moreover, there are no degree programs for controls engineering or powertrain engineering. *Id.*

In response, Plaintiffs point to the language in a proposal that "It is expected that SpecSys will staff [the] effort with the following (4 Full Time Engineers): Qty 2 Hydraulic & Powertrain Engineers / Designers [and] Qty2 Electrical & Controls Engineers." Pls.' Resp. at 13 (citing Doc. No. 375-16 at 1). Plaintiffs contend that the matter is one of contract interpretation and should be reserved for the jury.

SpecSys fails to provide a meaningful discussion of how the probative value of the proposed evidence is substantially outweighed by the purported danger of misleading the jury. *See* Fed. R. Evid. 403. Without more, the Court determines that "such weighing should be done against a backdrop of the actual evidence at trial." *Richardson*, 186 F.3d at 1276. The request is therefore DENIED without prejudice.

XVI. *Evidence of Economic Development Money*

SpecSys requests that the Court prevent Plaintiffs from mentioning to the jury that SpecSys received economic development funds from a municipality in Minnesota. Def.'s Mot. at 28. Plaintiffs respond that they do not intend to raise this matter at trial. The request is DENIED as moot. Pls.' Resp. at 14.

XVII. *Evidence of SpecSys Employees' Criminal Records*

SpecSys seeks the exclusion of evidence pertaining to the criminal histories of SpecSys employees. Def.'s Mot. at 28-29. Plaintiffs respond that they do not intend to raise this matter at trial. Pls.' Rsp at 14. The request is DENIED as moot.

*XVIII. Evidence of Lost Sales and Lost Parts Sales for TR-4, TP-4, RM-6, and RM-11*

SpecSys seeks to exclude evidence of lost sales and lost parts sales for the TR-4, TP-4, RM-6, and RM-11 machines, arguing that Plaintiffs "admitted" that they failed to mitigate their damages as to these items. Def.'s Mot. at 29-30. SpecSys argues that Plaintiffs failed to hire a new engineer after Chad Harrison quit and that, after Plaintiffs' relationship with SpecSys was terminated, Plaintiffs made a business decision not to pursue the RM-6 and RM-11 and never attempted to finish the TR-4 or the TP-4. Id. Plaintiffs respond that mitigation of damages is a question of fact for the jury. Pls.' Resp. at 14.

The Court declines to rule on the affirmative defense through a motion in limine. *See* 75 Am. Jur. 2d *Trial* § 42 (2021) ("The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss."); *Petty v. Metro. Gov't of Nashville & Davidson Cnty.*, 687 F.3d 710, 720-21 (6th Cir. 2012) (addressing use of motion in limine to dispose of affirmative defenses). This request is DENIED.

XIX. *Evidence of Lost Sales and Lost Parts Sales for the SP-5 and TM-11*

SpecSys also seeks to exclude evidence of lost sales and lost parts sales for the SP-5 and RM-11 machines. Def.'s Mot. at 31. SpecSys argues that CMI "admitted that [its] only lost sales were on the TR-4 and the TP-4" and that CMI sold "both the SP-5 and RM-11 just *months* after SpecSys was terminated." *Id.*(emphasis omitted).

Based on the limited information presented, the Court cannot conclude that there

are no damages that could be proved insofar as the cited machines and parts. This request for exclusion is DENIED.

XX. *Evidence of Costs of Parker Controls Used in SP-5 and TM-11*

SpecSys argues that evidence of the cost of what the parties refer to as the "Parker controls" used in the SP-5 and TM-11 machines following SpecSys' termination is irrelevant to the issue of damages and should be excluded. Def.'s Mot. at 31. SpecSys notes that the machines "used IFM controls" when SpecSys worked on them, but that "these controls were switched to Parker controls" when CMI hired Van-Tech to complete work on the machines. *Id.* Plaintiffs respond that the evidence is relevant because the costs were "incidental to the breach of the purchase orders" and speak to the issue of mitigation of damages. Pls.' Resp. at 15. Neither SpecSys' Motion nor the supporting documentation advises the Court of the reasons underlying CMI's decision to switch to the Parker controls.

The Court concludes that the actual cost of completion of the SP-5 and TM-11 machines is relevant to the issue of damages. Whether the switch from IFM controls to Parker controls was sufficiently related to the alleged breach under the applicable measure of damages is a determination for the jury. This request is DENIED.

CONCLUSION

For the reasons outlined above, Defendant's Omnibus Motion in Limine (Doc. No. 357) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED this 18th day of June, 2021.

CHARLES B. GOODWIN
United States District Judge